EXHIBIT B

# A TREATISE ON ARREST AND FALSE IMPRISONMENT

BY

CHARLES A. WEISMAN

# A TREATISE ON ARREST AND FALSE IMPRISONMENT

*by Charles A. Weisman*

Copyright © Dec., 1993 by Charles A. Weisman; 2nd Edition, Dec., 1994; 3rd Edition, Nov., 1996

Published by Weisman Publications • P.O. Box 240844 • Apple Valley, MN 55124

ISBN 1-929205-08-2

PRINTED IN THE UNITED STATES OF AMERICA

## CONTENTS

1. INTRODUCTION ..... 2

2. DEFINITION OF FALSE IMPRISONMENT ..... 3
   - What Constitutes False Imprisonment ..... 3
   - Length of Time Required ..... 5
   - Damages and Liability ..... 6
   - Malicious Prosecution ..... 7

3. ARREST WITHOUT WARRANT ..... 9
   - The Law of the Land ..... 9
   - Summons ..... 10
   - Complaint ..... 11
   - Memorandum of Law on Arrest Without Warrant ..... 13

4. BREACH OF THE PEACE & FELONY ARRESTS ..... 26
   - What is a Breach of the Peace? ..... 26
   - Arrests for Breach of the Peace ..... 27
   - Threatened Breach of the Peace ..... 29
   - Conditions of Felony Arrests ..... 31

5. DEFENSES TO UNLAWFUL ARRESTS ..... 32
   - Burden Of Proof ..... 32
   - Good Faith and Probable Cause ..... 34
   - Ignorance of Law ..... 36
   - Guilt of Party Arrested ..... 37
   - Immunity ..... 38

6. THE USE OF A WARRANT IN ARRESTS ..... 39
   - Warrant to be in the Possession of the Arresting Officer ..... 39
   - Warrant to be Shown Upon Arrest ..... 43
   - Invalid and Unlawful Warrants ..... 46

7. BRINGING ARRESTED PERSON BEFORE A MAGISTRATE ..... 49
   - Duty of Officer ..... 49
   - As a Trespasser Ab Initio ..... 52
   - Detainment is Not a Decision of Arresting Officer ..... 53
   - Arresting and Releasing Without Bringing Before a Magistrate ..... 56
   - Defenses ..... 57

8. DISTORTIONS OF FUNDAMENTAL LAW ..... 59
   - Due Process Neglected ..... 59
   - Fourth Amendment Argument ..... 60
   - Highway Traffic Laws ..... 61
   - Resisting Arrest ..... 64
   - Handcuffing ..... 69
   - Post-arrest Booking Procedures (Fingerprinting, etc.) ..... 70
   - Limitations Upon Arrests ..... 72

9. CONCLUSIONS and APPENDIX ..... 74, 75

# 1
# INTRODUCTION

This book is about liberty. It is about the lawful and unlawful means by which government acts in depriving an individual of his liberty. History teaches that deprivation of liberty is more often arbitrary and unlawful than it is otherwise. At least this is always the tendency of those who hold executive power. Daniel Webster once stated this problem in these words:

> *"The contest for ages has been to rescue liberty from the grasp of the executive power."*

Liberty is taken away or deprived most commonly by arrest and imprisonment. The practice of easy arrests and secret imprisonments has always been an earmark of a despotic executive power. To compound this problem, we have the legislative mills which turn out thousands of new laws every year. The passion of modern legislatures to regulate every facet of the most intimate concerns of every day life is notorious. This would be oppressive enough if administered under the requirements of a warrant or summons. But it becomes doubly intolerable if every zealous officer is authorized to arrest, on sight, every person whom he detects breaking one of these laws. No one can be safe to leave their home or to travel about for fear of being subject to thousands of unknown laws in which he could be instantly arrested for transgressing. One law review writer states the problem as follows:

> People no longer live their whole lives in the village in which they were born. They pass freely from place to place, and in transit go through innumerable towns and villages. The risk of being arrested on sight, because one's conduct contravenes some regulation which the wisdom of the local Solons deems necessary, is appalling to any thinking person. It would be impossible to know at what moment one might become amenable to arrest. [1]

A revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of persons and property. The history of our ancestors over the centuries teaches that a people cannot be free where the executive power can arbitrarily arrest or imprison citizens, or ransack at will the properties of the people. The executive power is limited and guided by the 'law of the land,' or 'due process of law.' If it was a restriction upon the King of England, it must be so for every petty officer today.

In many of the treatises on the law pertaining to the rights of citizens, and in many of the older and better court cases, we find the declaration: *"The law is very jealous of the liberty of the citizen."* What is the law that so regards liberty? It is the *Common Law*, and it declares that: *"one who interferes with another's liberty does so at his peril.*[2] This law also prescribes how arrests are to be made, and the restrictions involved.

1 *University of Pennsylvania Law Review,* vol. 75, p. 491, April, 1927.

2 *Knight v. Baker,* 117 Ore. 492, 244 Pac. 543, 544 (1926).

# 2

# DEFINITION OF FALSE IMPRISONMENT

## What Constitutes False Imprisonment

False imprisonment consists of any type of unlawful restraint or interference with the personal liberty of an individual. It basically involves any unlawful violation of the liberty of another. The ancient English legal scholar, Henry de Bracton (1200-1268) tells us that false imprisonment is one of the oldest violation of rights known:

> Forcefully to deprive a man of freedom to go wheresoever he may is clearly a trespass. False imprisonment was indeed one of the first trespasses recognized by the Common Law.[1]

False imprisonment is classified as a tort under the common law, and also as a crime.[2] It has been labeled as a tort, a trespass, an assault, a wrong, a damage, and an injury, giving one cause to bring suit against another for a remedy. Depriving a person of their liberty is legally no different than depriving a person of their property — a theft of liberty is a wrong by which remedy can be had, just as is the case with the theft of property.

False imprisonment is a great offense due to the high regard the law has for liberty. In Chitty's *Practice of the Law* it states:

> The infraction of personal liberty has ever been regarded as one of the greatest injuries. The injuries to liberty are principally termed *"false imprison- ments,* or *malicious prosecutions."*[3]

Unlawful detention or deprivation of liberty is the basis of an action for the tort of false imprisonment. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention.[4] Thus the only essential elements of the action are: (1) Detention or restraint against one's will; and (2) The unlawfulness of such detention or restraint.[5]

In his *Treatise on the Law of Torts,* Judge Cooley states:

> False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing, by force or threats, an unlawful restraint upon a man's freedom of locomotion.[6]

Blackstone, in his *Commentaries on the Law,* (3 Bl. Comm. 127) states on this matter:

> Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets.[7]

1 *Street's Foundation of Legal Liability,* vol. 1, p. 12, citing: *Bacton's Note Book,* vol. II, p. 314 (1229), pl. 465.

2 *Kroeger v. Passmore,* 36 Mont. 504, 93 Pac. 805, 807 (1908). *McBeath v. Campbell,* 12 S.W.2d 118, 122 (Tex. 1929).

3 Joseph Chitty, Esq., *The Practice of the Law,* vol. I, Chap. II, p. 47, London, 1837.

4 *Hanser v. Bieber,* 271 Mo. 326, 197 S.W. 68, 70 (1917).

5 *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952); *Sinclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E.2d 76, 79 (1940); *Southern Ry. Co. in Kentucky v. Shirley,* 121 Ky. 863, 90 S.W. 597, 599 (1906).

6 Thomas Cooley, *Treatise on the Law of Torts,* vol. 1, 4th Ed. § 109, p. 345; *Meints v. Huntington,* 276 F. 245, 248 (1921).

7 Cited by: *Fox v. McCurnin,* 205 Iowa 752, 218 N.W. 499, 501 (1928); *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952).

Thus any type of detainment or confinement of a person, or restriction or deprivation of their liberty or freedom of locomotion, where he is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an "imprisonment." The only question thereafter is whether or not the imprisonment is "false." The word "false" comes from the common law and is synonymous with "unlawful." A false arrest is one means of committing a false imprisonment.

In describing false imprisonment as being the unlawful restraint of the liberty of the citizen, or of the primary right of freedom of locomotion, the Supreme Court of Idaho also stated:

> Imprisonment is any restraint of the personal liberty of another; and prevention of his movements from place to place, or his free action according to his own pleasure and will; * * * it is false imprisonment when this is done without lawful authority. [8]

In reviewing several "text-book" definitions on false imprisonment, the Supreme Court of North Carolina stated:

> False imprisonment is the unlawful and total restraint of the liberty of the person. The imprisonment is false in the sense of being unlawful. The right violated by this tort is 'freedom of locomotion.' It belongs historically to the class of rights known as simple or primary rights. * * * The theory of law is that one interferes with the freedom of locomotion of another at his own peril.[9]

A rather complete description of what does and does not constitute false imprisonment was given by the Supreme Court of Kansas as follows:

> False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person or to his character or reputation; nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention; nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard.[10]

False imprisonment exists not only by words or acts that one *fears* to disregard, but also by such acts and measures that he *cannot* disregard. No fear of disobedience need to exist. If someone causes a situation that makes it impossible for another to exercise their liberty or locomotion, it is a false imprisonment.

False imprisonment is the name of the category for those torts that unlawfully deprive or interfere with the liberty of a person. Under this category, the unlawful arrest is the most common type of wrong committed. Another common way in which a wrong of this nature occurs is by the unlawful detention of a person in a room, jail, or other location. Definitions of false imprisonment usually come from unlawful restraints of this nature:

8 *Griffin v. Clark,* 55 Idaho 364, 42 P.(2d) 297, 301 (1935); citing, *Cordell v. Standard Oil Co.,* 131 Kan. 221, 289 P. 472, 473 (1930); *Johnson v. Tompkins,* 13 Fed. Cas. 840, 853, No. 7,416 (1833).

9 *Riley v. Stone,* 174 N.C. 588, 94 S.E. 434, 440 (1917).

10 *Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005, 1006 (1900); *Kroeger v. Passmore,* 36 Mont. 504, 93 Pac. 805, 807 (1908).

> False imprisonment has been well defined to be a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without any legal authority.[11]

The law sets such a high value upon the liberty of the citizen that even an attempt to unlawfully arrest is esteemed a great provocation.[12] All the authorities agree that an arrest may be made either with or without any physical force or actual touching by the officer.[13] Thus any illegal restraint of one's personal liberty by the act of another, gives that person a cause of action for false imprisonment against the one causing the illegal restraint. Prima facie any restraint put by fear or force is unlawful.

False imprisonment is necessarily a wrongful interference with the personal liberty of an individual usually made by an arrest, and physical custody or restraint is not essential to the effectuation of an arrest. So if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such person is deprived of his liberty, and if the act of the officer is unlawful, it is false imprisonment. In all cases in which there is no physical touching or seizure, nor any resistance, the intentions of the parties to the transaction are to be considered. In such a case there must have been intent on the part of one of them to arrest or restrain the other, and intent on the part of such other to submit, under the belief and impression that submission was necessary.[14]

The following definitions will provide further insight into the nature and elements of false imprisonment:

> False imprisonment is the unlawful restraint by one person of the physical liberty of another, and as here used the word "false" seems to be synonymous with unlawful. [15]

> Any exercise of force, or expressed or implied threat of force, by which in fact the other person is deprived of his liber- ty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment.[16]

> False imprisonment is the unlawful arrest or detention of a person, without warrant, or by an illegal warrant, or a warrant illegally executed.[17]

> Any restraint, however slight, upon another's liberty to come and go as he pleases, constitutes an arrest.[18]

### Length of Time Requirement

The tort or wrong of false imprisonment occurs the instance that one is restrained in the exercise of their liberty. There is no *unreasonable length of time* for a restraint before the tort can be claimed.

> False imprisonment at common law and elsewhere consists in the unlawful detention of the person of another <u>for any length of</u>

11 *Riegel v. Hygrade Seed Co.,* 47 Fed.Supp. 290, 294 (1942).

12 *Giddens v. State,* 154 Ga. 54, 113 S.E. 386, 388 (1922).

13 *McAleer v. Good,* 216 Pa. 473, 65 Atl. 934, 935 (1907).

14 *Johnson v. Norfolk & W. Ry. Co.,* 82 W.Va. 692, 97 S.E. 189, 191 (1918).

15 *Mahan v. Adams,* 144 Md. 355, 124 A. 901, 904 (1924).

16 *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 139 S.E.2d 199, 201 (1964).

17 *Noce v. Ritchie,* 155 S.E. 127, 128 (W.Va. 1930).

18 *Turney v. Rhodes,* 42 Ga.App. 104, 155 S.E. 112 (1930).

time, whereby he is deprived of his personal liberty. [19]

Where two people are traveling in a car and stopped by police, and the party not driving is put in the police car and told to wait, the officer doing so is guilty of false imprisonment. Even though the the person was in the police car for less than a minute, it was an arrest, as the officer had no authority for confining him in the car. Even where police officers stop a moving vehicle for a brief detention, it is sufficient to constitute an arrest. [20] Where one is told to stay in their car by an officer, though it be for only ten seconds, it is an arrest. Time duration is not a factor in making an arrest.

> False imprisonment is defined as an act which, directly or indirectly, is a legal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other.[21]

When one is approached by an officer and questioned about his identity and actions, this is only an *accosting,* not an *arrest.*[22]

## Damages and Liability

One who interferes with another's liberty of locomotion does so at his own peril. All who do so without lawful authority can be sued for the trespass upon liberty and loss of time. It thus is a very serious thing to deprive a person of their liberty.

Since false imprisonment is a wrong suffered by a person, that person is entitled to receive a remedy for damages. Not only is a person entitled to receive a remedy for the deprivation of his liberty, but also for any other damages that are a result of that deprivation.

False imprisonment was an indictable offense at common law, and relief by the party aggrieved was obtained by an action for trespass *vi et armis* (with force & arms).[23]

The illegal arrest of a person without a warrant, or under an invalid warrant, entitles him to compensation for the damages sustained by reason of the false or unlawful imprisonment.

> The general rule of damages in cases of false imprisonment is that the person causing a wrongful imprisonment is liable for all the natural and probable consequences thereof. The plaintiff is entitled to recover damages for what the party wrongfully did. * * * In Murphy v. Countiss, 1 Harr. (Del.) 143, in an action for trespass, assault and battery, and false imprisonment, the court held that the plaintiff could recover, not merely for the time the constable was bringing him to jail, but for the whole period of his imprisonment. And in Mandeville v. Guernsey, 51 Barb (N.Y.) 99, the court said: "The arrest being wrongful, the defendant is liable for all the injurious consequences to the plaintiff which resulted directly from the wrongful act."[24]

Unlawful interference with or injuries to the liberty of a citizen is a violation of his natural, inherent and absolute rights, which damage results as a legal consequence.[25]

19 *Sinclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E. 76, 79 (1940), citing: 3 Bl. Com. 127; 12 *Amer. & Eng. Ency. of Law,* 721; 19 Cyc. 319.

20 5 *American Jurisprudence,* 2d, "Arrest," § 1, p. 696.

21 *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 92 (1952).

22 Cornish v. State, 215 Md. 64, 137 Atl.2d 170, 173 (1957).

23 *Meints v. Huntington,* 276 Fed. 245, 249 (1921), citing: 3 Blackstone, Com. 127, 4 Blackstone, Com. 218.

24 *Knickerbocker Steamboat Co. v. Cusack,* 172 Fed. 358, 360-61 (1905).

25 *Meints v. Huntington,* 276 Fed. 245, 248 (1921), citing: *Adler v. Fenton,* 24 How (65 U.S.) 407, 410 (1860).

A false imprisonment generally includes an assault and battery, and always, at least, a technical assault.[26] An unlawful arrest, imprisonment and prosecution of a person can cause that person many damages, including bodily pain, great physical inconvenience and discomfort, loss of time, mental suffering, injury to reputation, distress or anguish, humiliation of mind, shame, public ridicule, invidious publicity, and public disgrace. Some of these damages overlap to some degree but all can and have been claimed in false imprisonment suits.

Upon the subject of damages, the law specifies two kinds of damages or divides them into two classes. There are what are called "actual damages," then there are what are called "punitive damages."

Actual damages are such compensation for the injury as would follow from the nature and character of the act. They are the damages for wrongs received and injuries done when none were intended. In a false imprisonment they could include the pain and suffering which the average citizen would be supposed to suffer under such circumstances. They further can include the physical discomfort and sense of shame, wrong and outrage. These are also called compensatory damages as they compensate the injured party for the actual injuries sustained, and no more.

Punitive damages are those that grow out of the wantonness or atrocity, or aggravated by the act. They are the injuries and sufferings that were intended, or occurred through malice, carelessness or negligence amounting to a wrong so reckless and wanton as to be without excuse.[27] These are also called exemplary damages.

Anyone who assists or participates in an unlawful arrest or imprisonment is equally liable for the damage caused. Thus where a man was illegally arrested by a police officer, and was placed in a patrol wagon in which he was taken to the central station, it was held that the two officers in charge of the patrol wagon were liable, along with the arresting officer, for false imprisonment.[28]

## Malicious Prosecution

In many cases of imprisonment or wrongful arrests, there has often been a misunderstanding made between the charges of false imprisonment and that of malicious prosecution. While both may often involve a restraint of one's liberty, the two charges are not interchangeable or synonymous.

There is a fundamental difference between these two charges. They are made up of different elements, enforced by different forms of action, are governed by different rules of pleading, evidence, and damages, and are subject to different defenses.[29] One description of malicious prosecution is as follows:

> Malicious prosecution is an action ex delicto for the recovery of damages which have proximately resulted to person, property, or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and

26 *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 139 S.E.2d 199, 201 (1964). It has been said that, "An illegal arrest is an assault and battery," *State v. Robinson,* 145 Me. 77, 72 A.(2d) 260, 262 (1950).

27 *Ross v. Leggett,* 61 Mich. 445, 28 N.W. 695, 697 (1886).

28 *Cook v. Hastings,* 150 Mich. 289, 114 N.W. 71, 72 (1907).

29 *Snyder v. Thompson,* 134 Iowa 725, 112 N.W. 239, 241 (1907); 35 C.J.S., False Imprisonment, § 4, p. 625.

> with malice. In an action of this type the burden rests upon the plaintiff (the one bringing the suit) to establish each and all of the following propositions before being entitled to recover, to wit: (1) He was prosecuted in a criminal proceeding or civil suit; (2) Defendant instigated such prosecution; (3) The prosecution terminated favorable to the accused; (4) Defendant acted without probable cause; (5) Defendant acted with malice; and (6) Damages that were caused.[30]

In Indiana a case arose where a man sued several officers for unlawfully arresting and imprisoning him in the county jail, and without any charge preferred against him. The defendants insisted his complaint was bad as it did not allege that the imprisonment was malicious and without probable cause. The State Supreme Court rejected this claim:

> There is a marked distinction between malicious prosecution and false imprisonment. If the imprisonment is under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution. If it has been extra-judicial, without legal process, it is false imprisonment.[31]

An arrest or imprisonment can be malicious or false, but not both. In a case of malicious prosecution the arrest or detention is procured from malicious motives and without probable cause, but was done under lawful process; whereas in false imprisonment the detention is without proper legal authority.[32] One may be legally arrested for some alleged reason, but done maliciously. If he is found to be not guilty he then has a case for malicious prosecution but not false imprisonment. If the arrest is not pursuant to legal forms of the law, then whether he is guilty or not he has a case for false imprisonment but not malicious prosecution. If this is done with malice it would add punitive damages to the suit.

In describing the distinction between these two charges, the Supreme Court of Oregon stated that foundation of the cause of action for false imprisonment is the right which even a guilty man has to be protected against any unlawful restraint of his personal liberty; while a malicious prosecution case is founded upon the right of an innocent man to be compensated in damages for any injury he may sustain when a groundless charge is brought against him, even though such charge may be presented and prosecuted in accordance with the strictest forms of law.[33]

In other words, the want of authority is an essential element in an action for false imprisonment. Whereas malice and want of probable cause are the essentials in an action for malicious prosecution.[34]

Somewhat different to the wrong of malicious prosecution is the charge of abuse of process, which is the misuse of legal process for an ulterior purpose, in which malice or ill will may also be a factor.

The term malicious arrest is used in some cases instead of malicious prosecution, but the latter is broader in scope.

---

30 *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 91 (1952); *Cox v. Cashio*, 96 So.2d 872, 874 (1957).

31 *Colter v. Lower and Others*, 35 Ind. 285, 286-87, 9 Am. Rep. 735 (1871).

32 *Stallings v. Foster*, 119 Cal.App.2d 614, 259 P.2d 1006, 1009 (1953).

33 *State v. Williams*, 45 Ore. 314, 77 Pac. 965, 969, (1904).

34 *Roberts v. Thomas*, 135 Ky. 63, 121 S.W. 961, 962 (1909).

# 3

# ARREST WITHOUT WARRANT

## The Law of the Land

The authority to arrest without warrant was rather limited and well defined at common law — a law which has been made part of our constitutional law in the due process provisions. The common law rule on arrests is based on common sense.

As a general rule at common law, an arrest could not be made without a warrant. Thus the right to arrest a person without a warrant is an exception to the general rule. This simple rule was expressed by Justice Carpenter, in delivering an opinion for the Supreme Court of Michigan, as follows:

> The law governing this case is elementary. Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon or is about to commit a felony, a police officer has no authority to arrest without a warrant.[1]

The objective in this law was to have a balance between preserving liberty and preserving the peace. Those who committed the most heinous crimes, that being felonies, were a threat to the safety of society and could be summarily deprived of their liberty by arrest. Those committing a breach of the peace could also be summarily arrested, not for apprehension as a criminal, but to preserve the peace. But for other offenses, summary arrests had to yield to the liberty of the citizen. The liberty of citizens is too sacred to be left to the arbitrary will of men.

Every one knows what felonies are. The most common felonies are murder, rape, kidnapping, sodomy, abortion, treason, and arson. A breach of the peace is obvious and well known. Therefore everyone's liberty was safe since all knew for what they could and could not be arrested. But where is the safety in one's liberty if they are to be subject to every ordinance or law that legislative bodies may choose to enact? or if the law on arrests can be changed by statutes?

By the due process clause, the common law governs what the law on arrest is in this land, and where it exists the most statutes can be is declaratory of the common law. If there is no direct language in the constitution directing what procedure or process is to be followed, the common law is to be the due process of law followed, not a legislative statute or city ordinance. Officers who do not abide by this law are trespassers and are guilty of false imprisonment.

The following is some material to help the citizen in protecting his liberty from unlawful encroachment by executive officers. First, to initiate a suit against one who unlawfully deprives you of your liberty, there is an example of a "Summons" and a "Complaint" which need to be served upon the defendant and the court. There is also a "Memorandum of Law" on the subject of *Arrest Without Warrant* which is legal proof of the law that has existed for hundreds of years on this matter.

---

1 *Cook v. Hastings,* 150 Mich. 289, 114 N.W. 71, 72 (1907).

**STATE OF MINNESOTA** **DISTRICT COURT**

**COUNTY OF HENNEPIN** **FOURTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| Charles A. Weisman,<br>Plaintiff, | ) | Court File No. ______________ |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | **SUMMONS** |
| Mark L. Fahning,<br>Defendant. | ) | |
| | ) | |
| | ) | |

TO: Defendant above-named:

YOU ARE HEREBY SUMMONED and required to serve upon the Plaintiff an Answer to the Complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of such service. If you fail to do so, Judgment by Default will be taken against you for the relief requested in the Complaint.

Dated: August 23, 1993

______________________________
Charles A. Weisman,
Plaintiff
11751 W. River Hills Dr. #107D
Burnsville, Minnesota

**STATE OF MINNESOTA** **DISTRICT COURT**

**COUNTY OF HENNEPIN** **FOURTH JUDICIAL DISTRICT**

| | |
|---|---|
| Charles A. Weisman,<br>Plaintiff,<br><br>vs.<br><br>Mark. L. Fahning,<br>Defendant. | Court File No. ______________<br><br><br><br>**COMPLAINT** |

Plaintiff for his complaint against Defendant states and alleges:

1. On September 30, 1992, Plaintiff was traveling in his automobile on a public highway called I-35W, between Richfield and Minneapolis, going northbound when stopped by the Defendant acting as a Highway Patrolman, an employee of the State of Minnesota.

2. The Defendant asked Plaintiff to see his "driver's license." The Plaintiff explained that he is not a licensee under any board or commission and is not required to be a licensee. The Defendant insisted that Plaintiff must have the said license.

3. The Defendant then arrested, searched, and handcuffed the Plaintiff, without warrant, and over his objections that Defendant's acts were in violation of Plaintiff's rights and the constitutional provisions of due process of law.

4. The Defendant gave no specific charges to the Plaintiff for his being stopped or for the arrest, nor did he advise him of his rights, as shown in the Defendant's "field report," which contained only traffic misdemeanor charges. A copy of this report and an official "complaint" was received by Plaintiff two months after the arrest.

5. The Defendant brought the Plaintiff to the Hennepin County Jail where the Defendant knew that the Plaintiff would be subject to "booking," which included fingerprinting, photographing, and confinement for an indefinite period of time, and possibly be subject to other types of assaults and batteries.

6. Further, the Plaintiff, by his own admission, made no attempt to bring the Defendant before a magistrate or judge, when he had full opportunity to do so, being that the arrest occurred about 10:15 AM on a Wednesday.

7. The defendant, acting on his own accord, and without warrant or court order, had the Plaintiff's automobile towed to an impound lot, and put it on a "hold" order.

COUNT I

FALSE IMPRISONMENT

8. Plaintiff re-alleges paragraphs 1 through 7.

9. On September 30, 1992, the Defendant, without warrant or due process of law (Minn. Const., Art. 1, Sec. 7), unlawfully arrested the Plaintiff, and acting contrary to law, did falsely imprison the Plaintiff, depriving him of his liberty.

10. As a result of the Defendant's false imprisonment of the Plaintiff, the Plaintiff had his right to liberty violated, suffered mental anguish, a loss of time and wages in his work, and a discredit in his reputation by his failure to attend a scheduled meeting.

COUNT II

FALSE IMPRISONMENT

11. Plaintiff re-alleges paragraphs 1 through 7.

12. The defendant, upon arresting Plaintiff, brought him to the county jail for the purpose of booking and detaining him, and, by his own admission, made no attempt to bring the Plaintiff before a proper Judge or Court as is required by due process.

13. The acts of the Defendant in deciding how the deal with the Plaintiff after his arrest, and failing to take him to a Judge or Court to so decide, constitute false imprisonment by the Defendant under the law of the land (Minn. Const., Art. 1, Sec. 2).

COUNT III

ASSAULT AND BATTERY

14. Plaintiff re-alleges paragraphs 1 through 7.

15. Due to the unlawful acts of the Defendant, the Plaintiff suffered a series of assaults and batteries upon his person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, and harassment.

THEREFORE, Plaintiff demands Judgment against Defendant, as his liability appears, in the sum of Ten Thousand Dollars ($10,000), together with the costs and disbursements.

Dated: June 24, 1993

Charles A. Weisman,
Plaintiff
11751 W. River Hills Dr. #107D
Burnsville, Minnesota

**STATE OF MINNESOTA** **DISTRICT COURT**

**COUNTY OF HENNEPIN** **4th JUDICIAL DISTRICT**

| | | |
|---|---|---|
| Charles A. Weisman, Plaintiff, | ) | Case No. 93-12184 |
| vs. | ) | MEMORANDUM OF LAW ON ARREST WITHOUT WARRANT |
| Mark L. Fahning, Defendant. | ) | |

COMES NOW THE PLAINTIFF, Charles A. Weisman, a free citizen of the State of Minnesota, who respectfully presents and submits this memorandum as evidence and proof of the prevailing and controlling law regarding the matter now before the Court.

ARGUMENTS & STATEMENTS OF LAW

The Defendant claims that his arrest of the Plaintiff without warrant for the violation of two "traffic laws" was lawful. Defendant claims that he is authorized by statute to make arrests for any violation of laws of the state whether they are a misdemeanor or a felony when committed in his presence.

The facts of this case lead to the conclusion of law that the Defendant did not have any lawful authority to arrest the Plaintiff. The Defendant had no warrant for the arrest of the Plaintiff, and he alleges that he only saw Plaintiff commit a misdemeanor, i.e., a traffic violation. There was no claim of a felony committed or of a breach of peace committed. At common law, and under the provisions of Due Process of Law, such an arrest without a warrant can not be made. Since the arrest deprived the Plaintiff of his liberty by an act not pursuant to due process of law, the arrest is unlawful. Due Process is not determined by the legislature.

> It is manifest it was not left to the legislative power to exact any process which might be devised. The [due process] article is a restraint on the legislative as well as on the executive and judicial powers of government, and cannot be so construed as to leave

congress free to make any process "due process of law," by its mere will. *Murray's Lessee v. Hoboken Imp. Co.*, 18 How. (59 U.S.) 272, 276 (1855).

The Constitution of Minnesota declares that no person shall "be deprived of life, liberty or property without due process of law" (Minn. Const., Art. 1, Sec. 7). The words "due process" do not mean anything which the legislature may see fit to declare to be "due process of law" *State ex rel. v. Billings,* 55 Minn. 466, 474 (1893). Due process was intended to preserve established fundamental rights by requiring that they can not be deprived except by the established modes of law as existing under the common law. This guarantee that government shall follow a specified and pre-existing rule of conduct, process, or procedure is in itself a right the citizen held at common law, and was claimed by the colonists in early America. Thus, "it is clear that the common law is the foundation of that which is designated as due process of law" (6 R.C.L. "Const. Law," § 435). The constitution guarantees these pre-existing rights and procedures in the due process provision.

> What is due process of law may be ascertained by an examination of those settled usages and modes of proceedings existing in the common and statute law of England before the emigration of our ancestors. *Twining v. New Jersey,* 211 U.S. 78, 100 (1908).

> The expressions 'due process of law' and 'law of the land' have the same meaning. * * * The 'law' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted. *State v. Doherty,* 60 Maine 504, 509 (1872).

In interpreting what due process of law is, it has been held that "none of our liberties are to be taken away except in accordance with established principles" *Ekern v. McGovern,* 154 Wis. 157, 142 N.W. 595, 620 (1913). Thus the mode of arrest by which one can be deprived of his liberty is to be determined by the pre-existing common law principles and modes of procedure. A properly constituted warrant of arrest is a process at common law by which persons could lawfully be deprived of their liberty. The common law on arrest without warrant recognized only certain specific and well defined cases whereby a citizen could be deprived of his liberty. This cannot be abrogated or changed by the legislature.

The common law drew a distinction between an arrest for misdemeanors, such as that which the Defendant arrested the Plaintiff upon, and arrests for felonies. When a felony was committed an arrest could be made without a warrant, but no arrest could be made for a misdemeanor without a warrant unless it constituted a "breach of the peace." The misdemeanor traffic violation was not a breach of peace and thus the Defendant needed a warrant to make an arrest for such offense.

In determining the law surrounding arrests, the Supreme Court of South Carolina, in the case of *State v. Byrd,* 72 S.C. 104, 51 S.E. 542, 544 (1905), affirmed a prior decision of the Court holding that:

> At common law, as a general rule, an arrest could not be made without warrant for an offense less than felony, except for a breach of the peace. 3 *Cyc.* 880; *State v. Sims,* 16 S.C. 486.

The fact that the Defendant believed that the Plaintiff committed a misdemeanor and had charged him with a violation of the traffic law, did not authorize him to arrest the Plaintiff. In a New York case, the State Supreme Court held that a city alderman or justice of the peace could not, at common law, arrest or cause an arrest for a misdemeanor not amounting to a breach of the peace, without warrant, though happening in his presence. The Supreme Court, in the case of *Butolph v. Blust,* 5 Lansing's Rep. 84, 86 (1871) stated:

> At common law an arrest could not be made of a person charged with a misdemeanor except on warrant of a magistrate, unless it involved a breach of the peace, in which case the offender might be arrested by any person present at its commission. (1 Chitty, Criminal Law, 15; *Carpenter v. Mills,* 29 How. Pr. R. 473).

In the very well reasoned and authoritative case of *Ex parte Rhodes,* 202 Ala. 68, 79 So. 462, 464 (1918), the Supreme Court of Alabama related the due process provision to the act of arrests. It asserted that, "any seizure or arrest of a citizen is not reasonable, or 'due process,' merely because a Legislature has attempted to authorize it. These phrases are limitations upon the power of the Legislature, as well as upon that of the other departments of government, or their officers." In determining what was 'due process' regarding arrests the Court stated:

> It must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer. *Ex pate Rhodes,* 202 Ala. 68, 79 So. 462, 465; citing, *Sarah Way's Case,* 41 Mich. 304, 1 N.W. 1023 (1879), et al. Also cited and affirmed in *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579, 583 (1889); *State v. Williams,* 45 Ore. 314, 77 Pac. 965, 969, (1904); *Adair v. Williams,* 24 Ariz. 422, 210 Pac. 853, 856 (1922).

The Alabama Supreme Court in the *Rhodes* case went on to say that "the phrase 'due process' must be determined by what it meant at the common law, and when the Constitution was adopted" (p. 469). The Court then cites the case of *Tillman v. Beard,* 121 Mich. 475, 80 N.W. 248 (1899), in stating:

> Officers are justified in arresting without warrant only in cases of felony and breaches of the peace. This is elementary. It is needless to cite authorities.

At one time in the history of American law and jurisprudence, the concept that no one could be arrested for a misdemeanor except with a proper warrant was so basic and "elementary" that it was not necessary to give any authorities to prove it. Yet this basic concept was found to be too restrictive to the ever-growing oppressive government that has gained power in this country. Thus in order for it to control the liberty of citizens,

and to enforce its oppressive laws, the corrupt, *de facto* government has gradually undermined a very basic principle of constitutional law.

In the *Pinkerton* case, supra, it was held that a police officer could not arrest a woman, without a warrant, upon mere suspicion that she was upon the street for the purpose of prostitution, even under provisions of the city ordinance allowing such arrests. The fact that she had a reputation of being a "street walker," and that the officer knew of her reputation and believed she was plying her vocation as such, plus the fact she did not give her name to the officer stating "it was none of his business," and that she dared the officer to arrest her, did not give the officer grounds to arrest her. The Court said:

> If persons can be restrained of their liberty, and assaulted and imprisoned, under such circumstances, without complaint or warrant, then there is no limit to the power of a police officer. * * * Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our constitution guaranties. These are rights which existed long before our constitution, and we have taken just pride in their maintenance, making them a part of the fundamental law of the land. *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579, 582-83 (1889); *Larson v. Feeney,* 196 Mich. 1, 162 N.W. 275, 276-77 (1917).

Under the topic of "Arrest" as found in Vol. 2 of *Ruling Case Law,* we find the heading, "Constitutional Requirements as to Warrants," wherein it states:

> [T]he fundamental constitutional guaranties of personal liberty protect private individuals in the right of enjoyment of personal freedom without unlawful restraint, and it is universally recognized that no one may be arrested except by due process of law. (2 R.C.L. 463, § 21).

Here again we find that this principle of arrest only by due process of law was once universally recognized, yet the Defendant has ignored such process in his arrest of the Plaintiff. The law regarding warrantless arrests was also declared by the Supreme Court of Wisconsin in the case of *Radloff v. National Food Stores, Inc.,* 20 Wis.2d 224; 121 N.W.2d 865, 867 (1963) as follows:

> In *Stittgen v. Rundle,* (1898), 99 Wis. 78, 80, 74 N.W. 536, this court established the principle that "An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer." This rule was reaffirmed in *Gunderson v. Stuebing* (1905), 125 Wis. 173, 104 N.W. 149; 1 *American Law Reports,* Annotated, 585.

The *Radloff* case involved a shoplifter who was stopped and arrested by store employees for taking two cartons of cigarettes. The State Supreme Court said that the employees had the right to stop the shoplifter and recover the goods he had stolen from their employer, and were not negligent *per se* in so doing. However, since the taking of

the cigarettes constituted a misdemeanor, the store employees had no right to arrest the shoplifter when they had no warrant to arrest. In the *Gunderson* case, the court expalined that arrests without warrants were allowed at common law "only where the ends of justice would be defeated without it," and that it "must be confined to cases of strict public necessity."

Where a person was arrested without warrant and charged with "public drunkenness," which resulted in charges of "resisting arrest," it was held by the Supreme Court of North Carolina that the arrest was illegal as the state failed to make a prima facie case by showing that the defendant's conduct at the time of arrest amounted to either an actual or threatened breach of peace. The court said "it is manifest that mere drunkenness unaccompanied by language or conduct which creates public disorder amounting to a breach of the peace, will not justify arrest without a warrant," and that "not every misdemeanor is a breach of the peace." In a very well-reasoned decision on the subject of arrests, the Court held the following:

> It has always been the general rule of the common law that ordinarily an arrest should not be made without warrant and that, subject to well-defined exceptions, an arrest without warrant is deemed unlawful. 4 Bl. Comm. 289 et seq.; 6 C.J.S., Arrest, §. 5, p. 579. This foundation principle of the common law, designed and intended to protect the people against the abuses of arbitrary arrests, is of ancient origin. It derives from assurances of *Magna Carta* and harmonizes with the spirit of our constitutional precepts that the people should be secure in their persons. Nevertheless, to this general rule that no man should be taken into custody of the law without the sanction of a warrant or other judicial authority, the processes of the early English common law, in deference to the requirements of public security, worked out a number of exceptions. These exceptions related in the main to cases involving felonies and suspected felonies and to breaches of the peace (authorities cited). *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 102 (1954).

The overall opinion of the court stressed the principle of the common law as controlling in arrests, thus characterizing as erroneous the view that any offense in the presence of an officer is arrestable without warrant.

In Texas it was held that an arrest without a warrant, for selling in the officer's presence a railroad ticket in violation of a city ordinance prohibiting the selling of such tickets, was unlawful, as the offense charged was not a felony, nor an offense "against the public peace." *M.K. & T. Ry. Co. v. Warner,* 19 Tex. Civ. App. 463 (1898).

Sheriffs, constables and other officers under the executive branch of government had always been recognized as having authority to arrest for felonies committed and for misdemeanors amounting to a breach of peace. But this is the extent of their power to arrest without a warrant, and this constitutional principle is well-grounded in ancient common law safeguards of individual liberty:

> In England, under the common law, sheriffs, justices of the peace, coroners, constables, and watchmen were entrusted with special powers as conservators of the peace, with authority to arrest felons and persons reasonably suspected of being felons. * * * Conservators of the peace also had the authority to make arrests without warrants in case of a misdemeanor which involved a breach of the peace committed in the presence of the officer making the arrest. 2 *Ruling Case Law*, p. 446; *Orick v. State*, 105 So. 465, 469 (Miss., 1925); *Grahm v. State*, 143 Ga. 440, 85 S.E. 328, 330 (1915); *Kennedy v. State*, 139 Miss. 579, 104 So. 449, 450 (1925); *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.W.2d 907, 911 (1942); *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 756 (1930).

It has been held that constitutional provisions of rights are to be interpreted according to "the common and statute law of England prior to the emigration of our ancestors," and by the law established here before the Constitution was adopted. "Under the common law the powers of state agents were limited and the requirements for an arrest warrant was strictly enforced" *United States v. Tarlowski*, 305 F. Supp. 112, 116 (1969). This procedure for arrest is part of the "due process of law" provision of the constitution which protects citizens from the arbitrary infringement of their right to personal liberty. Thus, any specific authority for arrests must be based upon the common law procedures that allowed a deprivation of one's liberty. This was so held by the Supreme Court of Michigan as follows:

> It has already been decided that no arrest can be lawfully made without warrant, except in the cases existing at common law before our constitution was adopted. *People v. Swift*, 59 Mich. 529, 26 N.W. 694, 698 (1886).

Since liberty cannot be deprived except by the law of the land, or due process of law, no statute or ordinance can constitutionally be enacted which allows arrests without a warrant for any purpose the legislature decides. Due process is a limitation upon the legislature, and thus a legislative statute cannot be the due process by which one can be deprived of his liberty by arrests.

In a legal article titled, "Arrest With and Without a Warrant," written in the *University of Pennsylvania Law Review*, Vol. 75, No. 6, April, 1927, p. 485, numerous authorities were cited in support of the following proposition:

> It is usually said that not even a peace officer is privileged to make an arrest without a warrant for a misdemeanor which does not amount to a breach of the peace, and there are many cases which expressly deny the privilege to arrest for such a misdemeanor (p. 486).

In the Annotation of the *American Law Reports*, vol. 1, p. 585, is found a legal study titled: "Constitutionality of statute or ordinance authorizing an arrest without a warrant," in which the following is stated:

> It has been stated that in cases less than a felony an arrest could only be made without warrant, where there was a breach of the peace in the presence of the person arresting (cases cited).

"The limits to the power of arrest by a constable, without process, was well defined at common law. . . . To prevent the escape of a felon, he had authority to arrest anyone whom he reasonably suspected to have been engaged in the perpetration of a felony. To prevent breaches of the peace, he had the right to arrest any person who was engaged in, or in his presence threatened to engage in, an affray or other breach of the peace. Beyond this, the law did not allow him to exercise the function of determining whether there was a sufficient case of the violation of a law to justify an arrest." Reed, J., in *Newark v. Murphy* (1878) 40 N.J.L. 145.

After this excerpt the law report stated that "the foregoing statement from *Newark v. Murphy* is in accord with the weight of American opinion." Those cases which seemed to deviate from this proposition are those which have upheld arrests for certain acts that were unlawful at common law, such as "streetwalkers."

In Tiedeman's *"Treatise on the Limitations of Police Power"* (1886) § 33, is found the requirements for a lawful arrest and the exceptions to a warrantless arrest:

33. **What constitutes a lawful arrest.** — As a general proposition, no one can make a lawful arrest for a crime, except an officer who has a warrant issued by a court or magistrate having the competent authority.

33*a*. **Arrests without a warrant.**— Although it is the general rule of law that there can be no arrest without a warrant of the nature just described, yet there are cases in which the requirement of a warrant would so obstruct the effectual enforcement of the laws, that the ends of justice would be defeated. For public reasons, therefore, in a few cases the personal security of the citizen is subjected to the further liability of being arrested by a police officer or private individual without warrant. But the right thus to arrest without a warrant must be confined to the cases of strict public necessity. The cases are few in number, and may be stated as follows:

1. When a felony is being committed, an arrest may be made without warrant to prevent any further violation of the law.

2. When the felony has been committed, and the officer or private individual is justified, by the facts within his knowledge, in believing that the person arrested has committed the crime.

3. All breaches of the peace, in assaults and batteries, affrays, riots, etc., for the purpose of restoring order immediately.

The rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, or on view a breach of the peace, has never been extended to any and all misdemeanors. While there have been some erroneous decisions that have recognized statutes authorizing arrests for misdemeanors that do not constitute a breach of the peace, none are based upon the meaning of due process of law. Thus arrests are not lawful where only a misdemeanor occurs unless it is of the nature of a 'breach of peace.'

At the common law an officer had no authority to make an arrest for a misdemeanor though committed in his presence unless it involved a breach of the peace. * * * The right

of personal liberty is a very high prerogative right, and to deprive one of that right, without due process of law, we must find specific authority for doing so. It can not be left to inference or some strained construction of statute or ordinance. *State v. Lutz,* 85 W.Va. 330; 101 S.E. 434, 43 (1919).

The specific authority for arrests is grounded in the ancient settled maxims of law, which no statute can abrogate without violating the 'due process of law' provision of the constitution. Thus a warrant must be obtained for a misdemeanor that is not a 'breach of peace.' The supreme Court of Minnesota has stated on several occasions that even in the case of a felony an "arrest and search should not be made without a warrant unless there is a compelling necessity to do so." *State v. Mastrian,* 285 Minn. 51, 57 (1969). The supreme Court of Rhode Island in declaring the requirements at common law for an arrest stated:

> That law permitted an officer to arrest without a warrant on reasonable suspicion based on his knowledge that a felony had been committed. * * * In all other cases, except in the case of a misdemeanor amounting to a breach of the peace committed in his presence, an officer had no authority, at common law, to arrest without a warrant (authorities cited) *Kominsky v. Durand,* 64 R.I 387, 12 Atl.2d 652, 654 (1940).

In *American Jurisprudence,* 2d., Vol. 5, under the subject of 'Arrest,' sections 26 and 28, pp. 716, 718, it states:

> At common law, a peace officer cannot arrest without warrant for a misdemeanor, although committed in his presence, unless a breach of peace is involved.
>
> At common law, the right to arrest for a misdemeanor committed in the presence of the officer is limited to those offenses which amount to a breach of the peace. The basis for the rule is that arrest without warrant is permitted, in cases less than felony, not for the apprehension of the offender, but only for the immediate preservation of the public peace; and, accordingly, when the public peace is not menaced, a warrant is necessary. (authorities cited, see also section 22).

In *Corpus Juris Secundum,* Vol. 6A, under the subject of "Arrest," and under the heading of "Arrest or Detention Without Warrant" § 10, p. 17, it is written:

> At common law, however, it has always been the rule that, except in cases where the public security has demanded it, arrest without a warrant is deemed to be unlawful.

"Due process of law," which declares that no citizen shall be deprived of any of his rights of life, liberty or property, unless by the law of the land, or the judgment of his peers (Minn. Const., Art. I, Sec. 2 & 7), is the controlling factor in the matter of the arrest made by the Defendant. An arrest is a deprivation of one's liberty and the due process that must be followed in an arrest is that process which existed at common law. To prevent the exercise of arbitrary power at the discretion of government, it was deemed wise to secure the principles already settled in the common law upon this vital point of civil liberty in written constitutions (Cooley, *Const. Lim.* 364 and notes).

Where a Chicago policeman arrested a man for "vagrancy," the officer was found guilty by a jury of false imprisonment. The Supreme Court of Illinois upheld the conviction of the policeman and declared the rule of law regarding arrests without warrants:

> Blackstone says: "The constable hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace; and in case of felony actually committed, or a dangerous wounding whereby felony is likely to ensue, he may, upon probable suspicion, arrest the felon, and, for that purpose, is authorized (as upon a justice's warrant) to break open doors, and even to kill the felon, if he can not otherwise be taken." 4 Bl. Comm. 292.
>
> In all other cases, however, the authorities are uniform, a constable or policeman has no authority to make an arrest without a warrant (authorities cited) *Shanley v. Wells,* 71 Ill. 78, 82 (1873).

In a case for false imprisonment, the Supreme Court of Maine examined the law regarding arrests and held: "The principles which, by the common law, regulate the right to arrest, or cause an arrest, without warrant, have been long settled both in this country and England; and, by these principles, the rights of these parties must be determined." After citing numerous cases involving the authority to arrest, the Court stated:

> In many of these cases it seems to have been held that the authority of an officer to arrest for misdemeanor, without warrant, is limited to breaches of the peace or affrays, committed in his presence. *Palmer v. Maine Cent. R. Co.,* 42 Atl. 800, 803, 92 Me. 399 (1899).

In a case involving a state liquor prohibition law, a man, while walking down along a public street, was accosted by a police officer, and asked if he had any liquor on his person. He replied that he did. Thereupon the officer searched him and found a pint bottle of liquor in his inside coat pocket. He was then taken to the police station. The State Supreme Court of Wisconsin said that when the police office stopped the man he was illegally arrested and was illegally searched, as he had no warrant to do either. The Court said that "it is a serious thing to arrest a citizen, and it is a more serious thing to search his person" and it must be done "in conformity to the laws of the land." Regarding the law on arrests it held:

> <u>At common law</u> arrests for misdemeanors were not permissible without a warrant except for acts committed in the presence of the officer causing a breach of the peace. *Allen v. State,* 183 Wis. 323, 197 N.W. 808, 810, 811 (1924).

Thus in order that the citizen's sacred right of liberty be secure and preserved, it has always been fundamental law that arrests without warrant were not deemed lawful, with only a few well-established exceptions of felonies and breaches of peace. The liberty of citizens would never be safe if such principles could be determined and thus abrogated

by statute. Therefore these principles surrounding arrests are regarded as fundamental law under our American system of government, as held by the Supreme Court of Michigan:

> Under our system we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that no arrest can be made without warrant except in cases of felony, or in cases of breaches of the peace committed in the presence of the arresting officer. This exception, in cases of breaches of the peace, has only been allowed by reason of the immediate danger to the safety of the community against crimes of violence. *Yerkes v. Smith,* 157 Mich. 557, 122 N.W. 223, 224 (1909), citing: *Robison v. Miner,* 68 Mich. 549, 557-58, 37 N.W. 21, 25 (1888).

In the *Yerkes* case, it was held that the playing of baseball on Sunday did not necessarily involve a breach of peace justifying an arrest, though it may cause a breach of peace. The Court said that before a summary arrest can be made for a breach of the peace, not only must overt acts be committed in the presence of the officer, but they must be violent and dangerous acts of some sort. In the *Robison* case, the Court held that a liquor law ordinance which allowed arrests without process was unconstitutional because it was not pursuant to due process of law.

Where a man was arrested for public drunkenness, the question arose whether this was an offense for which one could be arrested without a warrant. The Supreme Court of Appeals of Virginia declared the law on arrests:

> [T]he common law relating to arrest is the law on that subject in Virginia. At common law a peace officer may arrest without a warrant for a breach of the peace committed in his presence, but for no other misdemeanor. *Galliher v. Commonwealth,* 161 Va. 1014, 170 S.E. 734, 736 (1933), authorities cited.

The common law on arrest is the same in every state, as due process of law has the same meaning throughout America. The security of the citizen's liberty in this country is to be more highly regarded than it was in England under the common law. To say it is less regarded is to make a mockery of the Revolution.

In a New Jersey case a man was arrested by two city policemen on orders of their superior to do so, alleging that he was guilty of disorderly conduct, and was taken to a police station and held over night. This was done without any charge or complaint made against the man and without any warrant, the only authority for the arrest was that the officers were told to do so. In a suit for false imprisonment it was held by the Supreme Court of New Jersey that the arrest was without authority and gave the following opinion:

> The legal principle underlying this case and the one to be applied to the facts is firmly embodied in the roots of the common law, which has been handed down to us from early times unimpaired, in its full vigor, for the protection of personal liberty, against illegal arrests. The liberty of the person is too important a matter to the state to be interfered with without the safeguards with which the law guards such invasions. This court has

said: The limits to the power of arrest by a constable, without process, was well defined at common law. The regard for liberty of the person was so great that the common law did not confer upon a mere conservator of the peace the power to touch the person of the subject, of his own volition, except in those cases when the interests of the public absolutely demanded it. *Collins v. Cody,* 95 N.J. Law 65, 113 Atl. 709, 710 (1920).

In a Pennsylvania case a woman was arrested for causing and procuring to be made, loud and annoying sounds and noises at late hours of the night, in a certain tent near a city street, by beating upon a drum. Upon indictment her counsel moved that the indictment be quashed as she was arrested without affidavit and warrant while she was in a tent upon private property. It was held that the arrest was unlawful as the act was such that summary arrest was not justified and due process required a warrant for such arrest:

It is the undoubted right of every person in this community not to be deprived of liberty without due process of law, and if the defendant has been arrested without due process of law, the indictment against her cannot be sustained. * * * It has long been recognized that arrests without warrant are justified in cases of treason, felony or breach of the peace, in which actual or threatened violence is an essential element: 1 Hale's P.C., 589; 2 Hawkin's P.C., ch. 13, sec. 8; 1 Burns, J., 287; 4 Blackstone, 292; 9 Bacon, Abrid., 468; 1 Chitty Cr. Law, 15; Clark's Criminal Procedure, 39; Russell, Crimes, vol. 3, page 83; 4 Amer. and Eng. Ency. of Law, 902. *Commonwealth v. Krubeck,* 8 Penn. Dist. Rep. 521, 522 (1899).

It must be remembered that, "Not every misdemeanor involves a breach of the peace." *Commonwealth v. Gorman,* 192 N.E. 618, 620. Under the common law, acts that were *malum per se,* that is wrong or unlawful by their nature, were often felonies or breaches of the peace, and subject to arrest without warrant. But that is not the law for an act that was only *malum prohibitum,* being made unlawful only by statute, and without such enactment were otherwise innocent acts. The law asserts that for such statutory misdemeanors, not amounting to a breach of the peace, there is no authority in an officer to arrest without a warrant.

As a general principle, no person can be arrested or taken into custody without warrant. But if a felony, or a breach of the peace, has, in fact, been committed by the person arrested, the arrest may be justified. *Burns v. Erben,* 40 N.Y. 463, 466 (1869); see also *Cunningham v. Baker,* 104 Ala. 160, 16 So. 68, 70 (1894).

While the "search and seizure" provision of the constitution regulates the manner in which warrants can be issued, it is the "due process" clause which protects citizens from unlawful arrests without warrant:

"No person shall be deprived of life, liberty, or property without due process of law." And, under like restrictions in the constitution, it has been held in some states that arrests shall not be made without warrant, except for felonies, and for breaches of the peace committed in the presence of the officer arresting. *North v. People,* 139 Ill. 81, 28 N.E. 966, 972 (1891).