> order that the party may have a speedy examination, if he desires it; and in the case of an arrest without warrant the duty is equally plain, and for the same reason, to take the arrested party before some officer who can take such proof as may be afforded.[29]

Executive officers or clerks are not to determine if a person arrested is to be held or released upon bail, or fix the amount of bail, since the power to do so is judicial.[30]

In a case where a person was lawfully arrested for driving an automobile while intoxicated, the arresting officer delivered him to the jailer at 4:30 p.m., with the instruction that he be held there until nine o'clock p.m., at which time he was to be brought before the judicial officer. The Supreme Court of Appeals of Virginia condemned this act asserting that the officer usurped the functions of a judicial officer:

> But the actions of the arresting officer and the jailer in denying the defendant this opportunity [to judicial review] by confining him in jail because they concluded that he was not in such condition to be admitted to bail, had the effect of substituting their discretion in the matter for that of the judicial officer. Under the circumstances here, the defendant was clearly entitled to the benefit of a judicial opinion and judgment upon the question of his eligibility for bail. This right was arbitrarily denied him. [31]

Executive officers cannot hold a person in order to complete paperwork or make out reports. Thus where a man was arrested without warrant and confined in the county jail without a commitment, the sheriff could not justify the confinement of the man by awaiting the pleasure of a deputy, or any one else, to file a complaint.[32] The power of the executive officer over a person's liberty ends with the lawful arrest, and he never has a discretionary power to detain the person without judicial authority.

> If the plaintiff was being detained for the purpose of arrest, it was the duty of the arresting officer to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit. The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes.[33]

## Arresting And Releasing Without Bringing Before a Judge

While most of the emphasis on this type of false imprisonment deals with the *delay* in presenting a prisoner to a judge, the real duty and requirement is the actual bringing, carrying or presenting the prisoner before a judge. Thus a complete *failure* to do this is obviously unlawful, and this most often occurs when the officer releases the person he arrested without judicial presentment.

An officer who arrests an individual, does not have the authority to place such person in a jail, or other holding place, and then later release him. As was revealed in the case of *Harness v. Steele*,[34] where the sheriff placed the person arrested in jail for an hour and then

29 *Simmons v. Vandyke*, 138 Ind. 380, 37 N.E. 973, 974 (1894); citing: *Ex parte Cubreth*, 49 Cal. 436 (1875); *Pratt v. Hill*, 16 Barb. (N.Y.) 303, 307 (1853); et al.

30 *Bryant v. City of Bisbee*, 28 Ariz. 278, 237 Pac. 380, 381 (1925); *State v. Miller*, 31 Tex. 564, 565 (1869).

31 *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 615 (1948).

32 *Bowles v. Creason et al*, 156 Ore. 278, 66 Pac.(2d) 1183, 1188 (1937).

33 *Geldon v. Finnegan et al.*, 213 Wis. 539, 252 N.W. 369, 372 (1934).

34 64 N.E. 875, 878 (1902).

released him without bringing him before a Justice of the Peace, he was thus guilty of false imprisonment.

It has become a common practice for arrested persons to be taken to a jail or police station to be "booked" fingerprinted, photographed, measured, questioned, imprisoned and then released after paper work is completed. This wicked and oppressive procedure is so far removed from what due process of law requires, it is shocking that such measures could be widely accepted as "legal." The process of imprisonment and release at the discretion of the executive officer was condemned by the Supreme Court of Illinois in stating:

> When officers assume the power to imprison without authority of law, or without any forms or processes usual and necessary to be employed, they become liable for false imprisonment. The liberty of the citizen cannot be so far trifled with, that any constable in the land may of his own volition, commit and hold him in custody until it suits his convenience or pleasure to release him.[35]

When a constable or sheriff decides to release the person arrested without taking him before a magistrate, he assumes judicial powers upon himself and is liable. Thus where a town constable arrested a person who was intoxicated, and imprisoned him in "lock-up" until he became sober and then released him without taking him before a magistrate, he acted unlawfully and is liable. In this case the Supreme Court of North Carolina stated:

> Men may not be arrested, imprisoned and released upon judgment or at the discretion of a constable or any one else. If the alleged offense be criminal in its character * * * the officer may arrest and take the offender before a magistrate for trial. * * * The constable arrested and imprisoned him, not for safe keeping until he could be tried before a competent tribunal, but he imprisoned him until he became sober, according to his judgment, and then released him. The constable thus constituted himself the judge, jury and executioner. This is the best description of despotism.[36]

When an officer institutes an arrest, he now has undertaken the duty to bring the arrested party to a magistrate. The person can only be released by judicial, not executive, authority.

> The duty of the one making an arrest to bring the prisoner before a proper magistrate that proceedings for the trial of the prisoner may be instituted and that he may have an opportunity to give bail or otherwise procure his release, is even more imperative than if a warrant had been issued before arrest; and if the prisoner is released without being brought before such magistrate, the officer or private person who made the arrest becomes a trespasser ab initio.[37]

Arresting a person is a step in prosecution, and if he is released not according to law it is an "escape." Such an escape is a departure of a prisoner from custody before he is discharged by due process of law.[38] If a person is arrested pursuant to a warrant, he "must be taken to a magistrate before he can be released" (1 Wharton, Cr. Proc., 195).

In deciding if a chief of police acted properly when he put two individuals he

35 *People v. McGurn,* 341 Ill. 632, 173 N.E. 754, 757 (1930).

36 *State v. Parker,* 75 N.C. 249, 250 (1876).

37 11 *Ruling Case Law,* "False Imprisonment," § 15, pp. 801-02. See also, *Williams v. Zelzah Warehouse,* 126 Cal.App. 28, 14 Pac.(2d) 177, 178 (1932).

38 *Hefler v. Hunt,* 120 Me. 10, 112 A. 675, 677 (1921).

arrested in jail over night, and releasing them on their depositing bail, the Federal Court of Appeals said "the actions of the officer in this case were arbitrary and unjust." The police chief had no right to determine bail and then release the prisoners without a hearing before a judge, the Court said:

> In an able opinion (*Ex parte Harvell,* 267 F. 997, 1003), Judge Conner said: "The imprisonment in jail of a citizen without warrant, without opportunity for a hearing or to give bail, is a serious matter. * * * The duty in every case is imperative upon the officer 'to forthwith carry the person arrested before the nearest judicial officer having jurisdiction to hear and determine the legality of such arrest.' *Ex parte Van Hoven,* Fed. Cas. No. 16,858. * * * In 25 C.J. 491 and 493 the general rule is stated as follows: "One making an arrest may be liable in an action for false imprisonment where he fails to take the person arrested before the officer designated in the warrant, or, if the arrest is made without warrant, to the nearest committing magistrate.[39]

If a prisoner accepts his release or is released at his request or with his consent, he does not waive his right of action. To say he has no right to sue under such conditions, is allowing a situation that is "susceptible of working great injustice." Where a person is unlawfully detained, "he has a right of action irrespective of his release." [40]

## Defenses

Just as "good faith does not excuse an unauthorized arrest," likewise, it does not "justify an unreasonable detention and deprivation of one's liberty" caused by a failure or delay in bringing one arrested "before a magistrate."[41]

It has been a common practice for officers to drop off persons they have arrested at a "police station" or "county jail" and leave the prisoner in the custody of others. This is a very dangerous and irresponsible act for an officer to follow. In doing so the arresting officer relinquishes his duty and at his risk relies on others to lawfully deal with the arrested party. No officer can claim exemption from liability when he relies on others to take the arrested person before a judge without delay. He is responsible for the arrested person and cannot rely on others to perform his duty:

> Orders from a superior do not excuse the arresting party from his duty [to bring the prisoner before a judge], nor does delivery of the prisoner into the custody of another person; all those who take part in so detaining a person an unreasonable length of time are liable.[42]

The Supreme Court of Ohio had stated a similar rule:

> The delivery of the plaintiff, after his arrest, into custody of another person, to be by him taken to prison, could not, we think, absolve the arresting officers from the duty required of them to obtain the writ necessary to legalize his further imprisonment. * * * If the arresting officers choose to rely on some other person to perform that required duty, they take upon themselves the risk of its being performed; and, unless it is done in proper time, their liability to the person imprisoned is in no wise lessened or affected[43]

39 *Moran v. City of Beckley,* 67 Fed.(2d) 161, 164 (1933). See also, *United States v. Janus,* 30 F.(2d) 530 (1929).

40 *Stromberg v. Hansen,* 177 Minn. 307, 225 N.W. 148, 149 (1929).

41 *Oxford v. Berry,* 204 Mich. 197, 170 N.W. 83, 89 (1918).

42 *Moran v. City of Beckley,* 67 Fed.(2d) 161, 164 (1933).

43 *Leger v. Warren,* 62 Ohio St. 500, 57 N.E. 506 (1900).

One of the most common defenses raised in suits of false imprisonment of this nature, involve arguments of whether the delay in bringing one to a court was reasonable or necessary. In Virginia it was said that in determining whether an arrested person has been brought before a magistrate "with all practicable speed," or without unnecessary delay, depends upon the circumstances of the particular case. "Ordinarily, this is a question for the jury unless the facts are disputed."[44]

The Common Law principle is that an officer is to present the person arrested "without delay" to a magistrate. This means no delay of time is allowed which is not incident to the act of bringing the accused to a magistrate. The cause of this breach of duty arises from the officer's total failure to act, or failure to act timely. If he does not act diligently, he may not act timely.

A reasonable time is not when the officer has free time, but means promptly, immediately, and without delay, as soon as the circumstances permit. It was stated in an earlier case in New York that:

> [I]t was the duty of the officer making the arrest to convey the prisoner immediately before the nearest magistrate. [45]

In determining whether or not an officer's failure to take an arrested man before a magistrate immediately after his arrest was an unnecessary delay, the Supreme Court of Texas stated:

> The accused has the right to be presented without delay, but the question of what is delay must be determined by all the facts and circumstances. Necessarily some time must elapse between the arrest and the presentment before the magistrate.[46]

It has been the practice of legislatures and courts to establish set times of 24, 36, or 48 hours for the delay allowed from the time of arrest until presented to a magistrate. Such measures are blatant acts of tyranny, as anyone can see that if such power exists to allow a delay of 24 hours, then the power also exists to delay in 72 hours or 168 hours. The Common Law Rule nullifies the exercise of such arbitrary power.

Thus the only defense of this breach of duty is to account for the time in a delay.

It has been held that a delay of from 1 1/2 to 4 hours in failing to take a prisoner before the magistrate, arrested without a warrant, constitutes false imprisonment.[47]

If an officer delays 36 hours in bringing one arrested to a magistrate, but can account for the delay of time by such reasons as bad weather, the judge was not immediately available, the one arrested needed medical attention, etc., he is not then liable for false imprisonment. But if an officer detains one he arrested for ten minutes to see if he will confess, the officer becomes a trespasser and is liable.

44 *Mullins v. Sanders,* 189 Va. 624, 54 S.E.2d 116, 120 (1949); *Brown v. Meier & Frank Co.,* 86 P.2d 79, 83 (Ore. 1939).

45 *Green v. Kennedy,* 48 N.Y. Rep. 653, 654 (1871).

46 *Hicks v. Matthews,* 266 S.W.2d 846, 849 (Tex. 1954).

47 *Williams v. Zelzah Warehouse,* 126 Cal.App. 28, 14 Pac.(2d) 177, 178.

# 8

# DISTORTION OF FUNDAMENTAL LAW

As we look at the common law principles and procedures for arrests which have existed for hundreds of years, as compared with the law enforcement methods employed by most tyrannical forms of government, it is evident that we are closer to the latter. There are several reasons for this trend towards oppressive control over the citizen.

## Due Process Neglected

Due process, or the law of the land, is to act a shield against arbitrary activity of government. Since the days of King John and Magna Carta, history shows it is the first thing violated by over-bearing rulers. In America the due process provision embraces common law maxims and principles. In fact there are many cases where the courts would cite the common law requirements for an arrest without warrant, but then would cite and follow some statute on arrest which was contrary to the common law principle.

In nearly all of these cases where statutes contrary to the common law were upheld, we fail to find arguments asserting the requirement of due process of law. And in very few of them was the arrest treated as a deprivation of liberty, which cannot be done except by due process of law.

This departure from the common law rule on arrest is not all the fault of the courts, but also of those unlawfully arrested for failing to raise the proper arguments in court. While there are many cases in which the arrested party has asserted the common law rule on arrest, in most they have failed to also claim the due process clause. Without such a constitutional plea, the statute prevails.

Since the time this country was founded there have been hundreds of cases involving false imprisonment or unlawful arrest. Yet the proper due process argument is scarcely to be found among them. It is amazing that in 200 years of our country's history, so few have argued this most basic and important provision of constitutional law in defense of liberty in such cases.

This failure to claim due process in arrest cases over this period of time certainly does not say much about those in the legal profession. The incompetency of most lawyers was express by Chief Justice Warren Burger when he stated that "nine out of ten lawyers are incompetent." Most lawyers are not independent thinkers; instead they are nothing more than programmed robots who follow the path laid down by the prevailing system—whether it be just or corrupt. When it becomes corrupt, they will follow corrupt rules and statutes above fundamental law.

This failure on the part of lawyers is especially remarkable when we consider the ancient existence of this due process guarantee, and that it is prominently found not only in our constitutions, but in *Magna Carta*, which proclaims:

> No free man shall be taken or imprisoned or dispossessed, * * * except by the legal judgment of his peers or by the law of the land.

The word "taken" has sometimes been translated as "seized" and "arrested." The phrase "law of the land" means the same as "due process of law," and refers to the law already established in the land. Thus no one could be arrested except by the established common law that prevailed in the land. It does not mean some new law that the legislature might devise.[1]

The due process argument in false imprisonment cases will nullify the statutes, rules and ordinances that are contrary to the common law rule on arrest. No legislative act can abrogate what is the law of the land, otherwise there is no such thing as due process. Government has encroached upon the citizen's liberty by ignoring due process.

The common law allowed arrests without warrant only for known felonies and breaches of the peace. This is a required condition under "due process of law" in order to arrest someone. Thus it has been said that:

> Arrest without warrant, where a warrant is required, is not due process of law; and arbitrary or despotic power no man possesses under our system of government.[2]

It should be quite obvious that if the legislature can say that arrests can be made without warrants for all misdemeanors committed in the presence of an officer, it can say that such arrests can be made when the misdemeanor is not in the presence of the officer. It also could say that such warrantless arrests can be made for mere suspicion, or because someone might break a law. All would be subject to summary arrests without question or warrant.

One of the main reasons that a sword was put to King John to sign Magna Carta, and why the American colonists took up guns against King George III and his army, was to prevent the arbitrary acts of government in depriving people of their rights and liberties. Human nature as it is, such arbitrary action is the natural tendency of those having power in government; and without the due process provision, government is free to encroach upon the rights and liberties of citizens with immunity.

The term "due process of law" had a well settled meaning when the constitution was adopted. The framers thereof intended to perpetuate and secure the many principles, laws and rights, all of which could not be listed, against abrogation. Subsequent legislation cannot change the meaning or effect of this constitutional provision, and thus cannot change the procedure by which one is to be deprived of his liberty by way of arrest. An arrest cannot be done except by the law of the land, or due process of law.

## Fourth Amendment Argument

Another reason for the distortion that has prevailed in the matter of arrests is the frequent misuse or misapplication of the Fourth Amendment in the U.S. Constitution, or similar provision in the State Constitution, used as a defense to arrests without warrant.

The Fourth Amendment, which guarantees "the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures," generally does not apply to arrests made without warrants, but only those made with

1 For more information on this principle of law refer to *"Life, Liberty and Property"* by the author.

2 *Muscoe v. Commonwealth,* 86 Va. 443, 10 S.E. 534, 536 (1890).

warrants.[3] The provision regulates how warrants are to be issued: "no warrant shall issue, but upon probable cause, supported by oath . . ." If an arrest was made with a warrant, it must follow the criteria of the Fourth Amendment otherwise it is an unlawful arrest, as the warrant would be illegal. But where there was no warrant, this provision is not applicable, rather we would apply the standards of due process of law.

In one case in Illinois where a person was arrested without warrant pursuant to a statute, the person arrested questioned whether the statute is in violation of the search and seizure section of the State Constitution, similar to the 4th Amendment. The State Supreme Court said:

> But this [section] has application only to warrants. It does not abridge the right to arrest without warrant in cases where such arrests could be lawfully made at common law before the adoption of the present constitution.[4]

It is perhaps due to the ignorance of so many in the legal profession that we so often find this Fourth Amendment argument used as a defense against a warrantless arrest.

The Fourth Amendment argument in cases involving arrests without warrant have been the most common defense raised, and the distortion in law it has created has been all too great. Due to this erroneous argument, the courts have developed the concept that any and all arrests are lawful as long as there was "probable cause." But under the common law, unless there is a felony, probable cause has no bearing on an arrest without warrant. Probable cause is to be a criteria in issuing warrants, but it now has been used as a means to get around using them in misdemeanor arrests. This is now adopted policy and many modern court decisions reflect this distorted argument.[5]

## Highway Traffic Laws

Traveling down the road today in an automobile through most any town, a citizen can become subject to hundreds of laws, rules, ordinances and regulations which a citizen traveling in a wagon in 1900 never experienced. In fact, the bulk of these laws and regulations never could have been applied to the citizen traveling in 1900.

Because of the exposure to "traffic violations," the general public has been affected by many aspects of law enforcement that they would not otherwise experience. This experience includes arrests, searches, seizures, stopping to check for licenses, registrations, or seat belts, drunk driver tests, all kinds of automobile inspections, tickets, arraignments, and court trials.

In examining the court cases over the years involving these "traffic violations," there is a clear struggle and conflict between the fundamental rights of citizens and an extraordinary system of law enforcement. It is a system which is oppressive and despotic in nature, and which can summarily and arbitrarily deprive a citizen of his liberty.

3 1 Am. Law Rep., Annotation, 586; 5 Amer. Juris. 2d, "Arrest," § 2, p. 697.

4 *North v. People,* 139 Ill. 81, 28 N.E. 966, 972 (1891); see also *Burroughs v. Eastman,* 101 Mich. 419, 59 N.W. 817.

5 An example of this inaccurate argument of law was stated by the Supreme Court of Minnesota which said: "The Test, then, for the lawfulness of plaintiff's arrest is whether it was made with 'probable cause'." *Lundeen v. Renteria,* 224 N.W.2d 132, 136 (1974). This distorted and inept argument, as applied to misdemeanor arrests, has been pulled out of the air. There is no foundation for this to be found anywhere in law, but much to the contrary exists (see pg. 34).

How did such a system get a footing in America? This extraordinary control over the liberty of the citizen was established by having people sign up for a "driver's license." As with any license, those who accept one agree to be bound by the terms and rules under the license. They consent to its rules.

As an example, when a person consents to a search of his premises, that consent acts as a waiver of the right to assert that the search was unlawful, or that a search warrant was needed; and any evidence found in such a search can be used against that person.[6]

In a similar manner, when citizens have accepted a "driver's license" to do what they already have a fundamental right to do—travel down the roads—they have in effect consented to a law enforcement system that is contrary to that known at common law or under our Bill of Rights. They have consented to the rules and regulations of this system and cannot argue the common law or the Bill of Rights for they are not controlling when doing things under the license.

One of the rules under the driver's license is that a licensee can be stopped at any time by a police officer and be required to display his license to him. As it is stated in a Minnesota statute:

> Every licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand * * * by an officer authorized by law to enforce the laws relating to the operation of motor vehicles on public streets and highways.[7]

Note who is required under this statute to submit to a 'stop and check' by police officers and display their license. It is not every citizen traveling in his automobile, but "every licensee," that is, those who have accepted a driver's license. The *State v. Fish* case also said that "police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license," and that such a practice "does not constitute an unlawful arrest."

It was firmly held at common law, as stated by Blackstone, that one would be guilty of "false imprisonment" by the act of "forcibly detaining one in the public streets."[8] It even has been recognized in modern courts that officers stopping persons on the road is an arrest:

> When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case was complete.[9]

However, such arrests or detentions are regarded as being "reasonable," and don't need to fall within the "common law exceptions." Why? Because the people stopped had driver's licenses.

Since the vast majority of the people have voluntarily accepted the driver's license without objection, the courts have taken this as universal compliance with the licensing laws. Thus where one does not have a license it is regarded as public policy that they have no authority to drive the car upon the roads, despite the fact that they always had an inherent right to do so.[10] Thus the courts

6 *City of St. Paul v. Stovall,* 225 Minn. 309, 30 N.W.2d 638, 641 (1948).

7 Minn. Stat. § 171.08, cited in *State v. Fish,* 280 Minn. 163, 167 (1968).

8 3 Blackstone, *Commentaries on the Laws of England,* 127; citing *Coke's Institutes,* 2 Inst. 589.

9 *State v. Fish,* 280 Minn. 163, 166; citing: *Henry v. United States,* 361 U.S. 98, 103 (1959).

10 For information on this point see *The Right To Travel,* by the author.

have treated all citizens as being required to be license holders, and subject to the corresponding rules and regulations under the license, including being subject to arbitrary stops, arrests and seizures without warrant.

In a case in New Jersey, where two people were traveling in an automobile through Jersey City, they were stopped and arrested by police officers because they did not have a driver's license. The two were taken to the station house where they were "held for investigation." The Court held this oppressive procedure to be valid. It even cited the "common law rule" on arrest, asserting that other than to apprehend a felon or prevent a breach of peace, "the law did not allow an officer to exercise the function of determining whether there was a sufficient cause for an arrest." While this law on arrest had long been recognized in the State, the Court excepted by stating:

> But the authority to arrest, in the circumstances here presented, is derived from chapter 208 of the Laws of 1921, as amended by chapter 171 of the Laws of 1931. This act requires the registration of all automobiles driven in this state, whether owned by residents or nonresidents, and the licensing of operators of such vehicles. It directs that * * * this license and the registration certificate shall be in the possession of the driver or operator at all times. * * * A further requirement is that the driver shall, when so requested by a police officer * * * exhibit his operator's license. * * * Section 31 (1) of Act 1921, vests in any constable or police officer authority to arrest, without warrant, any person violating * * * any of the provisions of the act, and bring the defendant before any magistrate.[11]

Even though the common law on arrests was frequently upheld by the high court of this state in the past, when the driver's license law was enacted, the people were tricked into becoming subject to a new system of law enforcement. One that could arbitrarily stop and arrest citizens without warrant who had committed no felony or breach of peace.

It is to be noted that there was no due process of law argument which would have nullified the driver's licensing statute that allows arrest contrary to the common law. In like manner, there was no argument that the officers failed to take the two persons to a magistrate after the arrest, which even the statute required. Failing to raise the proper argument is always a fatal mistake.

In a case in Tennessee, which involved a misdemeanor, a man was arrested while he was traveling in the state. The State Supreme Court laid down several good principles of law, and related them to the American Revolution. It stated that "the stopping of a car by an officer for the inspection of a driver's license, or for any purpose where it is accomplished by the authority of the officers, is in fact an arrest, even though it be a momentary one in some cases." This is a true point of law and anyone can see that such a stop is an arrest. But such an arrest is consented to by way of the driver's license, as the court further stated:

> One of the few exceptions of the law relating to arrests without a warrant is the authority of highway patrol officers to stop a car and demand to see the license of the operator. This authority in itself is not known to the common law and is of statutory origin only. In fact, the authority is implicatively given in provisions of the laws relating to the issuance of licenses to drive automobiles.[12]

11 *Pine v. Okzewski,* 112 N.J.L. 429, 170 A. 825, 827 (1934).

12 *Robertson v. State,* 198 S.W.2d 633, 635-36 (Tenn., 1947).

This statement makes clear the reason for the "exceptions" to the common law rule to arrest— it is the acceptance of a driver's license. The terms of the license allow on the spot arrests to check for valid licenses and what ever else the legislature or the courts may decide is necessary.[13]

When one accepts such a license, then all of the sound and just principles of law, all of the constitutional safeguards, and all of the rights at common law no longer apply to them. Thus the decision here is not actually contrary to fundamental law because the licensee waived his right to that law. The people, of course, were never told that such a license would remove certain protections of the law and suppress certain inalienable rights, nor will they ever be told this by the government.

### Resisting Arrest

There are many cases on record involving actions against persons for assault of an officer or for resisting arrest. These cases are important in that they reveal the limitations of the executive officers in making arrests, and they reveal the high regard the law places upon individual liberty.

It must be remembered that an unlawful arrest is in itself an assault and a trespass, and the law regards such arrests as any other assault which may be resisted by the party being assaulted. As a result it is imperative that officers adhere to the law, as revealed by the Supreme Court of South Carolina:

> Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it, must do so in conformity to the laws of the land. There are two reasons for this; one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates.[14]

Where officers do not conform to the "law of the land" they have no authority and the right to resist them exists. A public officer, as with a citizen, who unlawfully threatens life or liberty, is susceptible to be injured or killed; for by such acts *"they draw their own blood upon themselves."* As stated in some cases, "where a peace officer has no right to make an arrest without warrant, he is a trespasser and acts at his own peril."[15]

Due to this, resisting unlawful arrests is another area that has been distorted by modern courts. This is because police today are constantly making unlawful arrests, and if people ever become aware of their right to resist such arrests, a majority of police would end up dead or quitting their jobs. Without a police force the corrupt government cannot enforce its corrupt system and could conceivably fall apart or die itself. Thus distortions of law are declared from the modern courts on this matter, as was stated by a recent Minnesota decision:

> This court has, however, rejected the argument that defendant has an additional constitutional right to resist an illegal arrest.[16]

---

13 It has been erroneously held that a state trooper can make an "investigative stop" for nothing more than "suspicion" of "criminal wrongdoing" *State v. Johnson,* 444 N.W.2d 824 (Minn., 1989). Such despotic measures are not to be found in the common law and have no place in a free nation.

14 *Town of Blacksburg v. Beam,* 104 S.C. 146, 88 S.E. 441 (1916); *Allen v. State,* 197 N.W. 808, 810-11 (Wis. 1924).

15 6A *C. J. S.,* "Arrest," § 16, p. 30, A sheriff who "acts without process," or "under a process void on its face, in doing such act, he is not to be considered an officer but a personal trespasser." *Roberts v. Dean,* 187 So. 571, 575 (Fla. 1939).

16 *City of St. Louis Park v. Berg,* 433 N.W.2d 87, 91 (Minn. 1988).

A corrupt government would naturally not want people opposing its unlawful and corrupt measures. To show how judicially corrupt and invalid this decision is, let us look at some earlier decisions on this matter.

Where an officer without a warrant attempted to make an arrest for a misdemeanor, and the person sought to be arrested had no notice that an attempt to arrest was being made by lawful authority, it was held that such person had the right to resist the attempted arrest.[17] The Supreme Court of Georgia later upheld this principle by saying:

> A citizen unlawfully arrested has a right to resist force with force in proportion to that being used to detain him. An unlawful arrest is an assault; the manner in which it is made may make it an assault and battery or a graver offense. If no more than proper force is used by the person sought to be illegally arrested in resistance thereof, he is guilty of no offense. * * * Generally, to slay a person who without authority of law is seeking to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid arrest, would be manslaughter, and not murder.[18]

In a case where there was transfer of an automobile, the new owner had called a police officer who, without warrant, arrested a woman involved because she refused to comply with his request to transfer the automobile, keys and certificate. The woman resisted the arrest and was convicted of resisting arrest. On appeal the Court of Appeals of Ohio said there was no offense committed by the woman in the presence of the officer, and there was no authority to make the arrest, and the woman was entitled to refuse to comply and to resist the officer. The Court held:

> What of the resistance to the arrest? The authorities are in agreement that since the right of personal property is one of the fundamental rights guaranteed by the Constitution, any unlawful interference with it may be resisted and every person has a right to resist an unlawful arrest. * * * and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary.[19]

The law that allows one to resist an unlawful arrest is the same law that allows them to repel an attack or an assault upon them — it is the law of self defense and self preservation. One has an inalienable right to protect his life, liberty or property from unlawful attack or harm.

This law allows another person to come to the aid of one being unlawfully arrested, just as it does where one is being assaulted, molested, raped or kidnaped. Thus it is not an offense to liberate one from the unlawful custody of an officer, even though he may have submitted to such custody without resistance.[20]

In a case in Maine a man had resisted an officer trying to arrest him, and both parties claimed that the other was the unprovoked aggressor and struck the first blow. The Supreme Judicial Court of Maine held:

> <u>An illegal arrest is an assault and battery</u>. The person so attempted to be restrained of his liberty has the same right, and only the same right, <u>to use force in defending himself</u> as he would have in repelling any other assault and battery. [21]

17 *Franklin v. Amerson,* 118 Ga. 860, 45 S.E. 698 (1903).

18 *Graham v. State,* 143 Ga. 440, 85 S.E. 328, 331 (1915).

19 *City of Columbus v. Holmes,* 152 N.E.2d 301, 306 (Ohio App. 1958).

20 *Adams v. State,* 121 Ga. 163, 48 S.E. 910 (1904).

21 *State v. Robinson,* 145 Me. 77, 72 Atl.2d 260, 262 (1950).

The Court went on to say that the person illegally arrested "cannot initiate the use of force," and that "words alone do not justify an assault." Thus a mere statement by an officer that a person is under arrest, even if there is no authority to arrest, "does not justify an attack by him on the officer before any physical attempt is made to take him into custody." This is basic law based on common sense which would apply to any two persons who would have a dispute between them. But where the officer initiates the assault by physical contact, which is usually the case, and there is an unlawful arrest, the citizen has the right to protect his liberty to the extent of killing the officer, as stated by the Supreme Court of Appeals of West Virginia:

> What rights then has a citizen in resisting an unlawful arrest? An arrest without warrant is a trespass, an unlawful assault upon the person, and how far one thus unlawfully assaulted may go in resistance is to be determined, as in other cases of assault. Life and liberty are regarded as standing substantially on one foundation; life being useless without liberty. And the authorities are uniform that where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether of a private citizen or a public officer, to the extent of taking the life of the assailant, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm.[20]

This case was cited and supported by the Supreme Court of Washington, who stated that the rule to follow is that the force used in resisting an unlawful arrest must be reasonable and proportional to the injury attempted. The Court held that:

> It is the law that a person illegally arrested by an officer may resist that arrest, even to the extent of the taking of life if his own life or any great bodily harm is threatened.* * *Every man, how- ever guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive.[21]

Where an arrest is unlawful, the officer becomes a wrongdoer, and the basic concept of resisting him cannot be denied, as said by the Supreme Court North Carolina:

> The offense of resisting arrest, both at common law and under the statute, presupposes a lawful arrest. It is axiomatic that every person has the right to resist an unlawful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense.[22]

Thus in a case involving a charge of "resisting arrest" in which there was a struggle and fight, and it was found that the officer had no authority to make the arrest, it was the officer who was regarded as the aggressor, not the person resisting, as the Supreme Court of Mississippi said:

> The courts generally hold that the right to resist an unlawful arrest is a phase of the right of self-defense; * * * the officer attempting to make an unlawful arrest is simply the aggressor in the difficulty, and stands in the shoes of any other aggressor in a like difficulty. * * * These courts hold that a person has as much right to resist such an invasion of his personal liberty as he has to resist death or serious bodily harm.[23]

The subject of "Resistance to Illegal Arrest," is dealt with in detail in *American Jurisprudence,* where it states:

20 *State v. Gum,* 68 W.Va. 105, 69 S.E. 463, 464 (1910).

21 *State v. Rousseau,* 40 Wash.2d 92, 241 P.2d 447, 449 (1952); *Porter v. State,* 124 Ga. 297, 52 S.E. 283, 287 (1905).

22 *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 102 (1954), authorities cited therein.

23 *Wilkinson v. State,* 143 Miss. 324, 108 So. 711, 712-13 (1926).

Any unlawful interference with the fundamental right of personal liberty may be resisted. Accordingly, every person has a right to resist an unlawful arrest. And, under certain circum- stances, a third person may lawfully interfere to prevent an illegal arrest.[24]

It has frequently been held in this country that one may resist an arrest where he does not know the official capacity or authority of the person attempting to arrest him; and this is true even though the person attacked has committed some offense which subjects him to arrest.[25] Likewise, when there is a lawful arrest, if the one arresting uses undue force or aggression it is an assault, and the person arrested has the right of self-defense and may resist and repel the attack.[26]

A person who is unlawfully arrested or restrained of his liberty can effect his release from such unlawful restraint at any time or place, even when in a jail or prison. In an earlier case in Connecticut, a man was arrested upon an illegal warrant, and after appearing before a justice of the peace, was committed to the common jail, to be held until discharged by due order of law. The man had broken out of the jail by sawing off the iron bars and removing large quantities of the wall. In the process, several other persons confined with him also escaped. It was held that the man committed no crime in destroying the prison and escaping, but rather the act was justifiable:

> A person confined in jail, by virtue of a void warrant, may lawfully liberate himself, by breaking the prison, using no more force than is necessary to accomplish this object. * * * A void process is no process. The complainant, the justice of the peace who ordered him to be committed, the sheriff who executed the pretended warrant, and the jailer who held him under it, are all liable for false imprisonment. This is the undoubted doctrine of the common law from the time of the *Marshalsea* case, 10 *Co.* 68. to this day.[27]

Not only was it held that the man could lawfully free himself from his imprisonment, since it was illegal, but he was not liable for the other prisoners who escaped as a consequence of his act.

This case was cited with approval by the Supreme Court of Illinois, in a case involving a man arrested on a warrant which had an insufficient affidavit. After his arrest he was placed in the custody of a constable and escaped from him. The court stated:

> The majority of the court are of the opinion that, the affidavit being insufficient, the prisoner was improperly deprived of his liberty, and he was justified in asserting his right to his freedom, guaranteed to him by the constitution and the law, by refusing to submit to the warrant. In breaking away from the officer's custody, he committed no offense. The rule, as found in treatises upon criminal law, is, that whenever an imprisonment is so far irregular, that it is no offense in the prisoner to break from it by force, and it will be no offense in the officer to suffer him to escape.[28]

In a case in Indiana, a man named Plummer went into the business streets with a gun, and vocally protested an order of the town board to have his trees trimmed. Someone called for the town marshal who told Plummer to put up his revolver.

24 *American Jurisprudence,* 2d Ed., "Arrest," § 94, pp. 778-780; *Thomas v. State,* 91 Ga. 204, 18 S.E. 305 (1892).

25 *Presley v. State,* 75 Fla. 434, 78 So. 532, 534 (1918); *Burkhardt v. State,* 83 Tex. Crim. 228, 202 S.W. 513 (1918).

26 *Mullis v. State,* 196 Ga. 569, 27 S.E.2d 91 (1943); *Owen v. State,* 58 Tex. Crim. 261, 125 S.W. 405 (1910).

27 *The State of Connecticut against Leach,* 7 Conn. Rep. 452 (1829).

28 *Housh v. The People,* 75 Ill. Rep. 487, 491 (1874) authorities cited.

Plummer told the marshal to keep back from him and walked away from him. The dialog was repeated. The marshal dodged behind trees and crept up to Plummer and struck him on the head with his billy club, and again on the back and arm, which knocked the revolver out of Plummer's hand, and thereupon the marshal fired on Plummer, missing him. Immediately thereafter Plummer fired at the marshal missing him. Several more shots were fired between them when Plummer fired the fatal shot that killed the marshal. Plummer was charged with six different counts of murdering the marshal. A trial resulted in a verdict finding him guilty of voluntary manslaughter. The Supreme Court of Indiana said the verdict was contrary to the evidence, and that Plummer was justified in his actions, holding that:

> The law does not allow a peace officer to use more force than is necessary to effect an arrest. An if he do use such unnecessary force, he thereby becomes a trespasser from the beginning, and may be lawfully resisted.
>
> If the officer is resisted before he has used needless force and violence, he may press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary. * * * But here the evidence wholly fails to show any necessity for the marshal's act in striking Plummer on the head with his club. He was therefore a trespasser in doing so, and was guilty of an aggravated assault and batter on Plummer.
>
> He did not stop at that, but he shot at Plummer with his revolver immediately after he struck him on the head, and before Plummer had fired at him. This gave Plummer a clear right to defend himself, even to the taking of the life of his assailant.[29]

In understanding this law on resisting arrest it is clear to see why a corrupt government, such as prevails today, would not want this fact of law to be readily known or accepted. As a government becomes more despotic, militant and totalitarian, so does the armed police forces of that government. Liberal and unlawful arrests are now the norm rather than the exception. If people upheld their rights in this matter, it would upset such a corrupt system.

The United States Supreme Court, and every other court in the past deciding upon the matter, has recognized that "at common law," a person had the right to "resist the illegal attempt to arrest him."[30] But the corrupt, modern day courts, such as the Minnesota Supreme Court, has attempted to deny that right, a right which all acknowledge that any animal has in defense of itself.

In a corrupt government as we see today, the police forces are taught and trained by the corrupt system, conveying to them false concepts of what is lawful. They are told not to trust any citizen, only another officer. As a result many patriots have ended up assaulted or killed by this armed force of the corrupt government. The citizen in a confrontation with this hostile and oppressive police force, now has a justifiable right to resist it out of fear of their lives. It has been held that a person can resist any arrest where he "has reasonable grounds to believe that the officer is not acting in good faith," and that "by submitting to arrest and being disarmed he will, by reason of this fact, be in danger of great bodily harm or of losing his life."[31]

29 *Plummer v. The State,* 135 Ind. 308, 313, 34 N.E. 968 (1893).

30 *John Bad Elk v. United States,* 177 U.S. 529, 534-35 (1899).

31 *Caperton v. Commonwealth,* 189 Ky. 652, 655, 225 S.W. 481, 483 (1920).

## Handcuffing

The people's lack of understanding of the law, or lack of concern for it, has allowed government to establish many unlawful and oppressive procedures in making arrests, etc. The use of handcuffs is a typical example of this.

The practice of physical restraint by handcuffing, leg irons, rope, straight-jackets and the like has historically been limited to those who had committed the most serve crimes, such as felonies, or have exhibited a violent temperament. In book 51 of the *Lawyers Reports Annotated,* p. 216, are listed several cases which show that the rule pertaining to handcuffing procedures "must depend upon the circumstances of each particular case." In citing and older English case it was held that the right to handcuff one in custody may exist "by reason of violence of language or conduct" of that person, however:

> There cannot be any general rule that will justify a constable in resorting to the extreme measure of handcuffing a person, in custody for a misdemeanor, to a felon, and marching them through the public streets from the police station to the magistrate's office.[32]

One who is accused of or guilty of a misdemeanor cannot be lawfully handcuffed while in the custody of an officer, and in some cases the prohibition extends to a felon. Usually handcuffing is justified only where one has attempted escape or has exercised violence toward the officer:

> But a constable cannot justify handcuff- fing a prisoner unless he has attempted to escape, or unless it be necessary in order to prevent his doing so. [33]

There thus can be no general law which requires or allows the handcuffing of every one arrested, as is the rule police now follow.

In the English case of *Osborn v. Veitch,* 1 Foster & Fin. Eng. Rep. 317, where a lawful arrest was made for a misdemeanor, it was held that "the handcuffing was utterly unlawful." When the person handcuffed sued the officer, a verdict was rendered for the plaintiff.

Thus the unwarranted use of handcuffs is regarded as an assault and battery and the person doing the handcuffing can be sued for the trespass.

## Post-arrest Booking Procedures (Fingerprinting, etc.)

The entire concept of proper procedure of dealing with one in custody after arrest has been further corrupted by the liberal "booking procedures" and post-arrest tests. This includes such acts as finger printing, measuring, photographing, blood, urine and breath tests, dexterity tests, etc. This subject needs to be covered here as it is not only directly connected with the procedure of arrest, but involved the right of liberty as does the subject of arrest.

In an early New York case, a man named Gow was charged and indicted by a grand jury with the crimes of grand larceny and forgery. Before his release on bail pending trial, a member of the police force of New York instructed Gow that he must come to police headquarters where he was to be measured, photographed, and fingerprinted. The Supreme Court of New York said:

32 51 L.R.A. 216, citing: *Leigh v. Cole,* 6 Cox's English Criminal Cases 329.

33 51 L.R.A. 216, citing: *Wright v. Court,* 4 Barnewall & Cresswell's English King's Bench Reports.

> Was the act of the officers of the police department in compelling the petitioner to submit to having his photograph taken and these measurements and imprints [fingerprints] made a lawful or an unlawful act? * * * To subject a citizen, never before accused, to such indignities, is certainly unnecessary in order to 'detect and arrest' him; for he must have been detected and arrested before he can be so dealt with. It is unnecessary to 'prevent crime,' for the acts for which indictment has been found, if criminal, have already been committed. * * * The exercise of any such extreme police power as is here contended for is contrary to the spirit of Anglo-Saxon liberty. * * * The acts of the police department here criticized were not only a gross outrage, not only perfectly lawless, but they were criminal in character. Every person concerned therein is not only liable to a civil action for damages, but to criminal prosecution for assault.[34]

The Court also made it known that it was "the duty of every member of the police force under penalty of a fine or dismissal from the force, immediately upon arrest, to convey the offender, not to police headquarters to be photographed and measured, but 'before the nearest sitting magistrate that he may be dealt with according to law'" (p. 1016). This was not only required by the city charter, but by fundamental law.

The *Gow* case was upheld several years later by the Supreme Court, in a case where it was acknowledged "that the taking of the plaintiff's picture before conviction was an illegal act."[35] In 1926, a law was passed whereby all person charged with a felony, specified misdemeanors, and one species of disorderly conduct, shall forthwith, upon arrest, be submitted to fingerprinting, a practice before permitted only after conviction. The law prohibited anyone being admitted to bail until they were fingerprinted to ascertain whether he has previously been convicted of a crime. A New York Court stated that the new law "involved a serious invasion upon the liberty of our people," and gave several reasons why such a law was not constitutional:

> Article 1, section 5, of the Constitution of the state of New York, provides: *"Excessive bail shall not be required."* The prohibition against excessive bail necessarily includes the denial of all bail. * * * A defendant is arraigned, in fact innocent, and refuses to submit to finger printing. A recoilment from it is not unnatural. It cannot be said that the refusal is unreasonable or unjustified. Yet he is denied bail. The requirement for finger printing is oppressive and unreasonable. It contravenes article 1, section 5, of the Constitution of the state of New York, and in my judgment is unconstitutional.
>
> There are other grounds upon which the unconstitutionality of the law must be declared. Article 1, section 6, of he Constitution of the state of New York provides: *"No person shall * * * be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law."* Finger printing is an encroachment on the liberty of a person. It is justifiable, as is imprisonment, upon conviction for crime, in the exercise of the police powers of the state, for the purpose of facilitating future crime detection and punishment. What can be its justification when imposed before conviction?
>
> To charge that one's fingerprint records have been taken would ordinarily convey an imputation of crime, and very probably support a complaint for libel *per se*. In my judgment, compulsory finger printing before conviction is an unlawful encroachment upon a person, in violation of the state

34 *Gow v. Bingham,* 107 N.Y. Supp. 1011, 1014-15, 1018, 57 Misc. 66 (1907).

35 *Hawkins v. Kuhne,* 137 N.Y. Supp. 1090, 153 App. Div. 216 (1912).

Constitution. Lastly, fingerprinting before conviction involves prohibited compulsory self-incrimination.[36]

The very idea of booking and making a record of one's fingerprints, photographs etc., are acts commonly done to convicted criminals, and thus implies one is a criminal. Corrupt governments are inclined to treat all citizens as criminals who break the smallest law it has passed, and process them as such without due process of law. All must be regarded as guilty until proven otherwise.

Some cases in Louisiana were decided which asserted that the power to fingerprint, etc., is constitutionally restricted to the "identification of the harden criminal." Such measures upon an accused were held to be "unnecessary to prove his guilt or for the identification of his person" or to "guard against his escape."[37]

A Federal District Court held that there is "no right given [to government] by the common law to take finger prints."[38] The principles of Anglo-Saxon government certainly would not have sanctioned such intrusive and oppressive measures.

In New Jersey, the Superior Court stated that the police cannot lawfully fingerprint an accused person against his will.[39] But later, in the case of *Bartletta v. McFeeley,* 107 N.J.Eq. 141, 152 Atl. 17, a New Jersey court went contrary to this position. The merits of that case have often been questioned and criticized, as one text writer asserts:

> The chancery court of New Jersey, it is submitted, reached a most unjust conclusion and utterly devoid of all reason wherein it was held that an arrested person charged with crime could be lawfully fingerprinted, measured, and photographed without his consent and against his will. Such unreasonable decisions, as this, go a long way to strike down personal liberty and invade rights that have been thought, ever since this government was established, to be inviolate.[40]

The *Bartletta* case had indeed gone a "long way to strike down personal liberty," as modern cases that allow such measures find their authority traced back to this unjust and frivolous case. When one bad case is decided, another follows it, then another, and all because the act or measure supported is more convenient for government, not because it is pursuant to fundamental law.

In 1945, the Court of Chancery of New Jersey made an exhaustive study into the law and cases surrounding the act of fingerprinting etc., and reached the conclusion that "there is no justification for the taking of fingerprints, photographs and other measurements in advance of conviction."[41]

Closely related to these measures is the act of compelling one to submit to blood tests, urine tests, etc., after arrest and before trial, to be used as evidence at trial against the person arrested or accused of a crime. In considering the act of compulsory blood tests, a New Jersey court based its decision on the "constitutional right to personal privacy and

36 *People v. Hevern,* 127 Misc. Rep. 141, 215 N.Y. Supp. 412, 417, 418 (1926).

37 *Schulman v. Whitaker,* 42 So. 227, 117 La. 704 (1906); *Itzkovitch v. Whitaker,* 42 So. 228, 117 La. 708 (1906).

38 *United States v. Kelly,* 51 Fed.2d 263, 266 (1931).

39 *State v. Cerciello,* 86 N.J.L. 309, 90 Atl. 1112, 1115 (1914).

40 Walter Anderson, *A Treatise on the Law of Sheriffs, Corners and Constables,* vol. 1, §186, p. 193. (1941).

41 *McGovern v. Van Riper,* 43 A.2d 514, 524, 137 N.J.Eq. 24 (1945).

security." The right of privacy, being derived from natural law, prevents such compulsory acts, as the court said:

> To subject a person against his will to a blood test is an assault and battery, and clearly an invasion of his personal privacy.[44]

This is another area which has been corrupted in order to satisfy the convenience of government at the sacrifice of the inherent or constitutional rights of the individual. The modern trend of the corrupt courts are to limited the protection of self-incrimination to evidence obtained by oral utterances, and not any physical evidence.

There are, however, other good cases which have held that a compulsory physical examination of a person accused of a crime is inadmissible, as it is a denial of the right against self-incrimination.[45]

We thus can conclude that there are at least five reasons why the acts of compulsory fingerprinting, blood tests, etc., are unlawful: 1) They are an evasion of the right of privacy, 2) Compels evidence to be used as self incriminating evidence, 3) Is an assault and/or battery, 4) Violates due process of taking one arrested first to a magistrate, 5) Prohibits bail and infringes on one's liberty.

## Limitations Upon Arrests

The common law drew certain limitations upon how and when an arrest can be made, and thus all arrests are to be grounded on such standards. But the ignorant and corrupt in government have always been bent towards broadening the causes and reasons for making arrests. One limitation often transcended is the sufficient cause required for a felony arrest or breach of peace:

> No one, whether private person or officer, has any right to make an arrest without warrant in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded.[46]

The word "suspicion" is found more frequently in statutes and codes to authorize arrests that the common law prohibited. In a case where a man was arrested for belief he possessed stolen goods, a felony charge, the arrest was held to have been unlawful. However, the police sought to justify the arrest upon the fact that, although there may have been no reasonable cause to believe that the man was guilty of a felony, yet he was in fact guilty of the misdemeanor of carrying a concealed weapon. They claimed that, although the weapon was concealed, the offense was committed in their presence, and it was suspected that he did have a concealed pistol, which was found after the arrest. The Supreme Court of New York held that there arguments were groundless:

> [An officer] cannot arrest a man for one cause, and when that cause is exploded [defeated] justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers, and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. * * * You cannot arrest a man merely

44 *Bednarik v. Bednarik,* 16 A.2d 80, 90, 18 N.J.Misc. 633 (1940).

45 *State v. Height,* 117 Iowa 650, 91 N.W. 935 (1902); *People v. Corder,* 244 Mich. 274, 221 N.W. 309; *Bednarik v. Bednarik,* supra (citing cases); *Boyd v. United States,* 116 U.S. 616 (1885); *State v. Newcomb,* 220 Mo. 54, 119 S.W. 405 (1909).

46 *People v. Burt,* 51 Mich. 199, 202, 16 N.W. 378 (1883).

> because, if all were known, he would be arrestable. You must arrest him for some specified cause, and you must justify for that cause.[47]

The court cited an early case in which there was an arrest under a warrant, but it was unlawfully executed in the nighttime. It was held that there was a false imprisonment the moment the officers took the plaintiff into custody under the warrant. When the officers demanded admittance to the plaintiff's house, he fired off a revolver. They defended their action upon the ground that, as the revolver was then used in their presence, under circumstances which constituted a crime, they were justified in arresting the plaintiff. But the court— Justice Haight writing—held that they were bound by the arrest under the warrant, and could not offer another cause, sufficient to warrant the plaintiff's apprehension, in justification of their action.[48]

This leads us to another point on arrests, and that is what ever reason or justification an arrest is based upon, it must not occur at a time when an arrest is not allowed. The common law set limitations on when an arrest could be made. Arrests were not allowed at nighttime, and warrants were of no effect at that time. An arrest for felony, treason or breach of peace could, however, be made at any time of the day.

> The general rule of law is that an arrest made on Sunday or other holiday, or at night, except in cases of pressing necessity, * * * is regarded as oppressive and without justification. The reason underlying this principle of law is due to the difficulty in making bail at such times. So an arrest made on Sunday, legal holiday, or at night, upon either civil process or a criminal warrant for a misdemeanor which said warrant does not involve a breach of peace [still in progress], subjects the officer to liability as for false imprisonment.[49]

In *American Law Reports, Annotated* (vol. 9, p. 1352), it states that "arrests should not be made at night or on Sunday," citing *Bryan v. Comstock,* 220 S.W. 475; et. al. As this is a common law concept, it is also due process, and cannot be abrogated by statute.

47 *Snead v. Bonnoil,* 63 N.Y. Supp. 553, 555, 97 N.Y. State Rep. (1900).

48 *Murphy v. Kron,* 8 N.Y. St. Rep. 230.

49 Anderson, *Treatise on Sheriffs, Coroners and Constables,* vol. 1, § 131, p. 126 (1941).

# 8
# CONCLUSIONS

The wisdom of the ages which brought about the law on arrests was boldly declared in *Magna Carta* — "No one shall be arrested or imprisoned but by the law of the land." This is called the common law and it is made constitutional law by the due process clause.

While this fundamental law appeals to individual liberty, it does not appeal to despots who express their will via corrupt statutes and judicial opinions. It comes down to the question of whether fundamental law is going to be controlling in this matter, or if legislative statutes and the will of despots are to be the prevailing law. Between these conflicting alternatives there is no middle ground, one or the other must be paramount.

In considering the matter of arrests in Anderson's *Treatise on the Law of Sheriff's,* is this noteworthy comment:

> *Heed should ever be paid to the voice of common law as it has echoed down through the ages, loudly proclaiming in the interests of the rights of the citizen, that it must not be forgotten that there can be no arrests without due process of law. An arrest without warrant has never been lawful except in those cases where the public security required it, and this has been confined to felonies and to cases of breach of the peace committed in the presence of the officer.*[1]

People today are obviously not being arrested or imprisoned "by the law of the land." Those in the governmental "system" fail to see the logic in the common law principles, and find them to be an annoying restriction in their task of getting the "crooks" or "bad guys." What they fail to understand is that this is exactly the point of the common law, to be restrictive upon those in government, to make them follow set procedures, and to make it difficult to deprive people of their rights. The common law prescribes that in order to safeguard the rights of the innocent, the guilty must on occasion go free. This sentiment was expressed by Sir William Blackstone when he said: *"It is better that ten guilty persons escape than that one innocent suffer."*[2]

In this country constitutions were written to "restrict" the actions of those in government. But it is daily being violated by judges, legislators, and police on the topic of arrests which makes them lawbreakers, as Justice Campbell said in the famed *Sarah Way* case:

> Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert.[3]

These officials should be asked, why is it we have less liberty today than did subjects living under a monarchy? It is because the subjects of the King had the benefit of the common law—the ancient principles and maxims that have been acknowledged for the security of life, liberty and property.

1 Walter Anderson, *A Treatise on the Law of Sheriffs,* Coroners and Constables, vol. 1, § 166, p. 160 (1941).

2 And as the U.S. Supreme Court said: "It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." *Henry v. United States,* 361 U.S. 98, 104 (1959).

3 *Sarah Way's Case,* 41 Mich. 299, 305, 1 N.W. 1021 (1879); *People v. McGurn,* 341 Ill. 632, 173 N.E. 754, 759. (1930).

The author had been involved in two different cases which precipitated this material. The events that occurred stand as a testimony to the corrupt and oppressive times we now live in.

**Case # 1.** This case was brought about when a Highway Patrolman stopped me as I was traveling on the freeway, and arrested me for no driver's license, and "evading a tax," (motor vehicle tax).

The fact that no breach of the peace occurred or felony charged is prima facie evidence that the Highway Patrolman was guilty of false imprisonment. Further, no one can be arrested for a tax (or have property taken) who has not been accessed or given notice of the tax, and had no opportunity to be heard to contest the tax.

When the Highway Patrolman received the Summons and Complaint against him, he went to the State Attorney General's office. An assistant Attorney General submitted a *Motion to Dismiss* with the court. The basis for the motion to dismiss the action was that, "the complaint fails to state a claim against the Defendant upon which relief can be granted." This is a general, catch-all argument raised by incompetent lawyers who don't know the law or know the law is not on their side.

The complaint did state a claim for which relief can be granted — that being false imprisonment and also assault and battery. If I had claimed that the officer stuck his tongue out at me and that was the basis for a tort, then the complaint would fail to state a claim upon which relief could be granted and it could be dismissed. But false imprisonment and assault have for hundreds of years been valid claims by which a remedy could be had.

The assistant Attorney General, in support of his motion, cites several Minnesota cases, but when I had looked them up I found that the decisions were all favorable to my position. His motion was most damaging to the State. For Instance, in his memorandum in support of the motion to dismiss, he cites a case that says: "Dismissal under Rule 12.02 is only appropriate if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." Yet he had just previously stated and agreed to the fact that I was arrested or deprived of my liberty! This is the only fact a Plaintiff need show to have a prima facie case. Thus a charge such as false imprisonment cannot be dismissed by a judgment of dismissal.[1] Another case he cites says that:

> "Allegations of constitutional error in the complaint preclude dismissal under Rule 12.02." Under well-settled principles of law, allegations of constitutional infirmities deserve a judicial forum. * * * the court is required to accept as true the allegations in the complaint when ruling on a Rule 12.02 motion. *Elzie v. Commissioner of Public Safety,* 298 N.W.2d 29, 32 (1980).

In the *Elzie* case, the Plaintiffs had "raised serious due process questions" in their complaint, as I did in mine! Thus the case is "precluded" from being dismissed! But all that this government lawyer could say is, "Here Plaintiff's claims are legally deficient on their face and should be dismissed." It is just a statement with no support!

The assistant Attorney General also stated the law for felony arrest, which is not at all applicable to this case. He also claimed that "the test for the lawfulness of Plaintiff's arrest is whether is was made with 'probable cause'." This of course is not the law, and two early Minnesota Supreme Court cases even state that this is not a valid argument. He made the claim of "collateral estoppel," thinking that these issues were already adjudicated at the criminal trial. But there was no adjudication, he only claims there was. He concludes by saying that the "legal theories advanced by the Plaintiff" are "novel and somewhat bizarre." There was a time in this country that legal arguments I stated were

1 It should be noted that this type of pretrial "judgment of dismissal was unknown at the common law." It came into existence only by statutes or codes. 16 Dunnell Minn. Dig. 41, citing, *Boom v. St. Paul Foundry,* 22 N.W. 538.

elementary. This proves how incompetent government lawyers have become.

The judge was even more incompetent (a black woman). All she did was merely repeat the contents of the Attorney General's memorandum. The erroneous nature of the decision was compounded by bring up issues and arguments that neither party had raised! At the end she said:

> "Even if there was false imprisonment and assault and batter during the booking, fingerprinting, and arrest of Plaintiff, this seems to be a classic case of that type of exercise of discretion giving rise to official immunity."

Do you believe this absurd statement? She is saying that a police offer can unlawful arrest you, commit assault and battery upon you, and they are immune from suit! In other words, they can do what ever they want and you have no remedy!

This case was appealed to the State Supreme Court. I was informed by the Clerk that I could not directly appeal to the Supreme Court. When I asked where this was stated, they looked in vain and could find nothing. The appeal was accepted by the Court (# C0-93-2086). However, a week later (Oct. 25, 1993) the Court issued an "Order" stating that the case is "dismissed." The Court thus did what it said only a few years earlier could not be done! Also, a dismissal of an appeal is unheard of, as it was not a petition or a writ. This was the first time I have known this to happen.

**CASE # 2.** On July 5, 1993, a deputy sheriff and a city policeman knocked on my door and said they had a warrant for my arrest. When I asked "what for?" they said it was for "evading a tax." I told them that I had already been in court on that matter. When they called to confirm the warrant they said it was still valid (the warrant was actually for an unpaid fine). I then asked to see the warrant. They said they didn't have the warrant as it was issued in another county. I told them that due process of law requires the warrant to be in their possession and to display it so I could see if it was valid. They said that such a measure would be ridiculous as it would seriously restrict police procedure in such matters. They said that they had 40 years of experience between them (20 years each) in making such arrests and knew what they were doing. They thus arrested me and took me to the county jail.

When I filed the suit against them, the deputy sheriff ran to the county attorney, but the city policeman had to go to a private attorney. The usual "motion to dismiss" was filed by each attorney, for "failure to state a claim. . ."

When I went to court for the motion hearing I was assigned to a judge whom I knew was fairly good and honest. But after sitting in the courtroom for about an hour my name was not called. Unknown to me at the time the county attorney (who had the disposition of a weasel) had my file removed from the stack on the judge's desk and reassigned the case to another judge. After a while a clerk came into the courtroom and said my case had been moved to another courtroom. I went to that room and sat there for about 12 minutes, then the two attorneys came out of the judge's chambers followed by the judge. They had been plotting and conspiring against me and convincing the judge to dismiss my case. This was because they came to realize that the law was not on their side, and even the statutes prohibited the officers from doing what they did. The system would be in jeopardy if this case went to trial.

Thus this corrupt, spineless and bias judge (Harvey A. Holtan) ignored the law and his duty and dismissed the case. But the attorneys and the policeman were still afraid of what might happen in an appeal since the officers were guilty as sin. They thus agreed to "waive attorney's fees and court costs" if I dropped the suit. Knowing the past experience with the corrupt appeals court I agreed to do so. The policeman had to pay over two hundred dollars in attorney fees.

Those who work for a corrupt government do all sorts of unlawful acts to protect the "system" which feeds them. They must resort to lies, cover ups or distortions of the law. But there is one thing that they can never do, and that is give a just and lawful reason for their actions.

It is said that life and liberty stand essentially upon the same ground, life being useless without liberty. Thus the law allows people to protect liberty as they would their life.

Any person who wants to protect and preserve liberty, and to check the arbitrary acts of government, will find this material critically important towards such ends.

When one is unlawfully deprived of his liberty he has suffered a "false imprisonment," whether it be by arrest, imprisonment, or improper procedure.

Throughout history the most common violation committed by governments against the rights of citizens is that of arbitrary and summary arrests. Such measures have long been the earmarks of a corrupt and despotic government.

To safeguard liberty, the Common Law has for over a thousand years established certain rules and procedures that must be followed before one can be deprived of their liberty by way of arrest or imprisonment.

These rules and procedures are part of "due process of law," and any officer or person that does not follow them can be sued for "false imprisonment."

This material details the limitations and requirements of government officers in making arrests, issuing warrants, imprisoning persons, and in enforcing the different types of laws — misdemeanors, breaches of the peace, and felonies.

The fundamental law on these matters will strike at the base of the corrupt police state system that is so prevalent today.

It has often been said that the liberty of the citizen is too sacred to be interfered with without established sanctions by which the law guards it.

Individual liberty is being violated hundreds of times every day because the people have forgotten the law which protects that liberty.

This book explains that law which was once regarded as elementary.

**ISBN 1-929205-08-2**