UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 07-012T |
| | ) | |
| JOHN RICCIO | ) | |

MOTION FOR SENTENCE CONSIDERATION

Now comes John Riccio, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a). After considering all the appropriate information present in this case, the Court should conclude that a probationary sentence sufficiently satisfies the purposes of sentencing.

Respectfully submitted
John Riccio
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was filed electronically with notification to Heather McLoughlin, United States Probation Officer, and Zechariah Chafee, Assistant United States Attorney, on October 4, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 07-012T |
| | ) | |
| JOHN RICCIO | ) | |

---

## MEMORANDUM IN SUPPORT OF SENTENCING

### I. Introduction

Mr. Riccio respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Riccio submits this memorandum in support of his Motion for Sentencing Consideration. Mr. Riccio requests the Court to impose a probationary sentence in this instance. A sentence of probation is sufficient to adequately addresses society's needs of punishment and deterrence, as well as Mr. Riccio's medical needs, without being longer than necessary.

### II. Factual and Procedural Background

The government charged Mr. Riccio by indictment with making a false statement on January 24, 2007. Specifically the government alleged that Mr. Riccio failed to disclose his previous employment at Wal-Mart, Warwick, RI, on a questionnaire he filed for his position as a baggage screener at T.F. Green Airport with the Transportation Security Administration (TSA) on June 9, 2006. Mr. Riccio proceeded to trial *pro se* on May 23, 2007, and the jury found him guilty of the offense charged on May 25, 2007.

The June, 2006, document with the omission (now called an SF-86) was, at least, the third such questionnaire filled out and filed by Mr. Riccio at the request of TSA. He filed an SF-85 with his initial application to TSA in October, 2003, prior to his employment at Wal-Mart. Mr. Riccio

worked at Wal-Mart during the Winter, 2003-04. Mr. Riccio started working for TSA in July, 2004. He filed an SF-86 in August, 2005, at the request of TSA because it was replacing the SF-85 form with the SF-86, and because the TSA had not yet conducted its background check of Mr. Riccio. The TSA discovered the Wal-Mart discrepancy on Mr. Riccio's August, 2005, SF-86 in approximately February, 2006. The agency did not ask Mr. Riccio about the omission, but instead asked him to file another SF-86 claiming that the previous form had been misplaced. Mr. Riccio provided another SF-86, with the same information as the prior two forms, on June 9, 2006. After this filing TSA investigators approached Mr. Riccio with a ruse of reviewing workers comp claims and asked him if the SF-86 was correct. The investigators did not question Mr. Riccio about the discrepancy. In fact, TSA officials never asked Mr. Riccio about the omission.[1] As of the time of trial, TSA had still had not conducted its background check of Mr. Riccio.

III. Sentencing Considerations

A. General

This case presents the Court with a novel sentencing landscape. The advisory guidelines are not at issue and neither are departures or variances.[2] The advisory sentencing range is probation up to 6 months in prison. Without reasonable disagreement, 18 U.S.C. § 3553(a) takes center stage in the Court's sentencing determination. The statute commands the Court to impose a sentence sufficient to address the purposes of sentencing (just punishment, deterrence, incapacitation, and rehabilitation) without being greater than necessary. 18 U.S.C. § 3553(a).[3] Applying the parsimony

---

[1] The government now alleges in its PSR statement, ¶ 7, that Mr. Riccio purposely withheld the details of his Wal-Mart employment from the TSA as part of some workers compensation scam. The Court correctly excepted this line of conjecture during the trial and therefore there is no evidence of such a scam before this Court at sentencing. Further, Mr. Riccio, acting *pro se*, objected to the goverment's version of events to the extent that it goes beyond what was presented at trial to the jury. Mr. Riccio maintains this objection.

[2] No downward departures or variances are at issue. No upward departures or variances have been suggested at the time of this writing either.

[3] The statute directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a) (section (2) listing the purposes of sentencing as just punishment, deterrence,

edict to Mr. Riccio's life and background, his offense of conviction, and the unique facts of this case more than reasonably supports a sentence of probation in this instance.

B. Objections to Presentence Report

Mr. Riccio timely filed objections to his presentence report pro se. He maintains those objections despite the probation officer's response. First, Mr. Riccio disputed the officer's conclusion that he had the financial ability to pay a fine should the Court deem a fine an appropriate part of this sentence. The response justified the conclusion as based on Mrs. Riccio's inferred financial contributions to the household expenses, the estimated equity in his home as of June, 2007, and the estimated equity Mr. Riccio has in a time-share property. Probation also points out that Mr. Riccio and his wife had at least enough discretionary funds to attend a Red Sox game in July, 2007. The Court needs to consider first that Mr. Riccio has been declared indigent by the Court and therefore unable to afford defense counsel in this case; thus the basis for his representation by the Federal Defender. He is not currently working and has been unable to work since his injury in June, 2007, receiving only workers compensation benefits. The financial statement reflects a $350 shortfall for Mr. Riccio's share of the household expenses, not the entire total of the expenses. Whatever Mrs. Riccio earns is not included in that shortfall because she is independently paying the other half of the expenses. The estimated equity in his home is just that: an estimate from June, 2007. Access to any equity in the home, however, is at the mercy of the real estate market and Mr. Riccio's credit rating, which will be significantly lower based on this conviction. While the time-share and the Red Sox game may show some discretionary income, those modest indulgences do not equate to any significant ability to pay a fine.

Second, Mr. Riccio rightfully dispute's the government's allegations in its PSR statement which are not supported by the facts presented during trial. There is no support for the characterization that Mr. Riccio "hid" his Wal-Mart employment from the TSA, nor any explanation as to why he would do so. There is no evidence that any of Mr. Riccio's injuries were fabricated;

---

incapacitation and rehabilitation). The statute further directs the Court to consider the background and characteristics of the defendant, the nature and circumstances of the offense, the kinds of sentences available, the advisory guidelines, the need to avoid unwarranted disparity in sentences, and the need for restitution when making its sentence determination. *Id.*

in fact, both Wal-Mart and the TSA did recognize the validity of those injuries. Additionally, the statements to Ms. Dogan and Agent Davis attributed to Mr. Riccio did not come into evidence at trial. Mr. Riccio is entitled to be sentenced on the evidence presented, not the government's opinion of the evidence.

C. First Time Offender

Mr. Riccio has no other contacts with the criminal justice system. He has led an exemplary life. He attended and graduated from the United States Naval Academy and went on to serve as a Navy aviator during the Viet Nam War. He was married and raised four children. He has maintained employment throughout his adult life including managing his own businesses. Now 63 years old he has remarried and continues to try to work and support himself and his wife.

When establishing the Federal Sentencing Guidelines, Congress mandated that the United States Sentencing Commission "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, . . ." 28 U.S.C. § 994(j). The Commission attempted to apply that direction to the guidelines in several ways. First, it established the criminal history gradations to differentiate defendants based on their past criminal behavior or lack thereof. *See* U.S.S.G. § 4 (Criminal History and Criminal Livelihood). Category I of the guidelines criminal history assessment covers first time offenders because they would have no prior criminal contacts. The Commission also established a departure ground for aberrant behavior (see U.S.S.G. § 5K2.20) and the safety-valve adjustment (see U.S.S.G. § 5C1.2) to address first offenders. These applications, however, do not necessarily fulfill Congress's intent in 28 U.S.C. § 994(j). For example, criminal history category I applies to first time offenders as well as defendants with minor criminal contacts or dated uncounted convictions.[4] The guidelines are not at issue here, but this Court should still consider Congress's counsel to impose non-jail sentences on first time offender not convicted of crimes of violence or other serious felonies. 28 U.S.C. §

---

[4] Recognizing this wrinkle, the Commission has further studied the different types of defendants who fall into category I and their rates of recidivism with the eye towards adjusting the criminal history category scheme. *See generally*, Recidivism and the First Offender, United States Sentencing Commission (May 2004) (available at www.ussc.gov/publicat/Recidivism_FirstOffender.pdf ) ("First Offender Report").

994(j). Mr. Riccio fits squarely into to Congress's definition of a first time offender.

D. Seriousness of the Offense

The Court must evaluate the true seriousness of the offense based on all of the information put forth by the defense and the government. 18 U.S.C. § 3553(a)(2)(A). The Court's determination of seriousness will necessarily reflect the defendant's culpability and therefore direct the Court to a just punishment. The just punishment must also reflect the parsimony considerations.

In this instance the jury found Mr. Riccio guilty of giving a materially false statement. The range of conduct which can amount to criminal under this statute varies exponentially. The most direct way to assess the seriousness of Mr. Riccio's conduct is to look at the context in which his omission occurred and the impact that omission had on the TSA (the recipient of the misrepresentation). Using this template, Mr. Riccio's transgression cannot reasonably be classified as a serious felony. Additionally, the advisory sentencing guidelines also look on this instance as, at most, a moderate felony.[5]

Mr. Riccio applied for a job with TSA at the airport. He filled out a questionnaire in October, 2003, at his initial interview that the TSA required for the purpose of investigating Mr. Riccio's background. The TSA hired Mr. Riccio nine months later in July, 2004. In August, 2005, thirteen months later, the TSA required Mr. Riccio to fill out a newer version of the questionnaire for his background investigation. After the TSA became aware of the Wal-Mart omission in February, 2006, six months later, they requested Mr. Riccio to again file an SF-86 form in June, 2006, four more months later. Mr. Riccio consistently answered all three questionnaires without reference to his employment at Wal-Mart (which, of course, was entirely accurate on the first filing). The TSA was also entirely consistent by never actually using the questionnaires to conduct a background check. In fact, the government has never made clear how the omission of this information actually impacted the TSA. The materiality of this omission is best characterized as marginal.

The government, however, presumably will argue two theories that bolster its claim of significant materiality and seriousness. First, the government alleged in its PSR statement that Mr.

---

[5] The guideline range remained the same for Mr. Riccio after trial as it would have been based on a plea of guilty: 0 to 6 months.

Riccio purposely withheld this information from TSA because he had a pending workers compensation case against Wal-Mart. This theory fails to succeed based on the evidence presently before the Court. TSA hired Mr. Riccio in July, 2004, based on his accurate SF-85 filing. The subsequent 2005 SF-86 did not list the Wal-Mart employment, but the government has been unable to show any untoward intent for this omission. The government may believe that Mr. Riccio decided to "hide" his Wal-Mart employment from TSA at that juncture, but it has no substantive evidence. Further, the government alleges that Mr. Riccio was collecting benefits from his Wal-Mart injuries while working for the TSA. The government has not presented evidence supporting that notion and the Court cannot infer that allegation based on this record. The government also consistently insinuates that Mr. Riccio's work injuries at Wal-Mart and the TSA were perhaps not valid. Mr. Riccio did in fact suffer injuries at work at both Wal-Mart and the airport.

The government's second theory of seriousness revolves around the mission of the TSA to provide security at airports across the United States. The defense has no quibble with the government touting the importance of TSA screening operations in airports in the wake of the tragedies of September 11, 2001. The mere fact that Mr. Riccio's position involved security at the airport does not mandate a prison sentence. For example, recently, a Federal Air Marshal pled guilty to violating this statute by filing an SF-86 with regard to his employment with the TSA and received a probationary sentence.[6] An air marshal is tasked with providing armed undercover security on flights within the United States; clearly a more sensitive TSA position than baggage screener. The TSA's important mission notwithstanding, Mr. Riccio's omission could not, does not, and did not have any quantifiable impact on the security at TF Green Airport. His omission as a baggage screener also cannot be reasonably compared to the air marshal case. Mr. Riccio's criminally offensive conduct here does not rise to a level of seriousness warranting a prison sentence.

E. Purposes of Sentencing

The statute directs the Court to impose a parsimonious sentence which supports the purposes

---

[6] This particular marshal, lied on his SF-86 about his former employment with a foreign police force, his work in overseas security for the US State Department, and his credit (he was denied a passport while a TSA employee for bad credit). *See* attached press release from United States Attorney, District of New Jersey (available at www.usdoj.gov/usao/nj/publicaffairs/index.html ).

of sentencing: just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Just punishment relates back to the seriousness of the offense, above, and does not warrant incarceration in this instance. The issues of deterrence, incapacitation, and rehabilitation, however, also point to a non-jail sentence.

Mr. Riccio is not a typical defendant before this Court for sentencing and his potential for recidivism, practically nil, emphasizes the distinction. The fact of conviction for a felony offense will aptly serve as a sufficient deterrent to Mr. Riccio. The United Sentencing Commission, as part of its charter, studied the concept of recidivism and identified many factors which correlate with the possibility of defendants reoffending. Mr. Riccio's situation encompasses a host of factors which lower the prediction of his commission of future crimes. For example, Mr. Riccio is educated, married twice with children, a first time offender, has no substance abuse problems, has strong employment history, and is 63 years old. *See* Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines, United States Sentencing Commission, at 12-13 (May 2004) (available at www.ussc.gov/publicat/Recidivism_General.pdf) ("Recidivism Report"). All of these attributes lower the likelihood of Mr. Riccio committing future crimes.[7] Further, the Sentencing Commission has determined through study that first time offenders (persons with no other contact with the criminal justice system at all) recidivate at the lowest rate of any distinct group; 6.8%. *See* First Offender Report, at 13-14, 16-17. That rate of recidivism does not include considerations of age, education, and employment, etc., which would push the prediction even lower. Realistically, Mr. Riccio does not present any threat to commit any future crime. A prison sentence does not properly address any necessary deterrent, and has no impact on Mr. Riccio's potential to reoffend.

The purpose of incapacitation serves to punish a defendant as well as protect society from the individual. Neither reason justifies a prison sentence in this instance. As stated, a felony conviction will sufficiently punish Mr. Riccio. He has led a pristine law abiding life including his Naval Academy education, service as a naval aviator in time of war, raising a family, and amassing a consistent employment history. Now he will be a 63 year old man with a criminal record who will

[7] A sentence of straight probation also presents a lower rate of recidivism than prison sentences or other confinement alternatives. Recidivism Report, at 13.

certainly be turned away from jobs for which he would otherwise be fully qualified. He will carry the stigma of "felon" in a community which does not normally see such a person. He will no longer be able to vote, hold office, or serve on a jury. To many defendants before this Court these rights are simply not much of a loss based on their individual backgrounds and prior criminal histories. For Mr. Riccio, however, they are truly significant punishments.

Incapacitation would also pervert the idea of protecting the public. Mr. Riccio has not committed a crime of violence or a serious felony offense, and clearly presents no threat to society. Incapacitation through a prison sentence would actually harm the public by forcing the public to pay not only for Mr. Riccio's custody, approximately $2500 per month, but also the management of his illnesses, which are legion. The public will be better protected and served by a non-jail sentence.

Lastly, a prison sentence will not promote any aspect of Mr. Riccio's rehabilitation. 18 U.S.C. § 3553(a)(2)(D). He is not in need of any educational or vocational training, or in need of any substance abuse treatment. He does require significant treatment and management of many diverse and ongoing health issues (as detailed in the PSR). Presently the Department of Veterans' Affairs Hospital in Providence manages Mr. Riccio's healthcare.[8] Even short term transfer of that treatment from VA control to the BOP can have lasting deleterious effects. Also the cost to the BOP does not justify the imposition of that burden. The commission has encouraged sentencing courts to depart from the guidelines on the basis of age and health considerations. *See* U.S.S.G. §§ 5H1.1 & 1.4. This case does not present fodder for a guideline departure, but does present every reason for the Court to avoid a prison sentence based on Mr. Riccio's health concerns.

## III. Conclusion

The Court must impose the minimally sufficient sentence in this matter per the guidance of 18 U.S.C. § 3553(a). In determining the minimally-sufficient sentence, the Court must basically ask whether a more severe sentence would achieve <u>greater</u> justice, deterrence, incapacitation, or rehabilitation. Considering all of the unique facts of Mr. Riccio's background and his offense conduct the Court should impose a probationary sentence. A probationary sentence is authorized

[8] He also is treating for injuries sustained this year with a second doctor (as detailed in PSR).

by the guidelines in this case, it represents Congress's will in this instance based on Mr. Riccio's status as a first time offender, and a prison sentence would impose a great hardship on both Mr. Riccio and the BOP based on health concerns. For all of these reason the Court should impose a probationary sentence.

Respectfully submitted
John Riccio
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this memorandum was filed electronically with notification to Heather McLoughlin, United States Probation Officer, and Zechariah Chafee, Assistant United States Attorney, on October 4, 2007.

/s/ Kevin J. Fitzgerald